J. A. BOLICH, JR., AND WIFE, ROSALIE F. BOLICH, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, WACHOVIA BANK AND TRUST COMPANY, TRUSTEE, NONA S. HANES AND THE BOLICH HOLDING CORPORATION.

(Filed 15 June, 1932.)

1. **Mortgages H b — Mere allegations of general financial depression, scarcity of money, etc., held not sufficient to enjoin foreclosure.**

Mere allegations of general financial depression, stagnation of the real estate market and scarcity of money for ordinary business transactions are not sufficient for a court of equity to enjoin the foreclosure of a deed of trust according to its tenor, the courts of equity usually exercising their power to enjoin foreclosure upon allegations of fraud, restraint, oppression, usury, mistake, etc.

**2. Same—Court may order foreclosure of mortgage on property held in custodia legis.**

> Where a mortgagor has transferred his equity of redemption to a holding corporation, and thereafter the holding corporation becomes insolvent and is placed in the hands of a receiver, the property is in *custodia legis*, but a court of equity has the power, in its discretion, to order the land sold, it not being required to retain control of the property when it would be inequitable to do so, and an order vacating an injunction restraining the sale under the mortgage is equivalent to leave to proceed in the exercise of the power of sale contained therein.

CIVIL ACTION, before *Harding, J.,* at January Term, 1932, of FORSYTH.

On or about 11 March, 1930, J. A. Bolich and wife, being the owners of a certain lot of land in Winston-Salem, borrowed the sum of $160,000 from the defendant, Insurance Company, and as security therefor executed and delivered a deed of trust to the defendant, Wachovia Bank and Trust Company, trustee. Thereafter, on or about 20 November, 1930, Bolich and wife made a certain contract with W. M. Hanes and wife, Nona S. Hanes, in which they agreed "to pay, renew or handle in a manner satisfactory to both parties each and every encumbrance against said property as the same came due." Thereupon, Bolich and wife conveyed the property to a corporation known as the Bolich Holding Corporation. Default was made in the payment of the indebtedness and the holder of the note requested the trustee named in the deed of trust to sell the property, and same was duly advertised for sale on 20 November, 1931. A temporary restraining order was issued, answers were filed by the parties, a receiver was appointed for the Bolich Holding Corporation, and at the final hearing the trial judge continued the injunction to the hearing, but decreed a foreclosure of the deed of trust and appointed a commissioner to sell the land for the reason that "the court is of the opinion that the parties opposed to said motion and sale have not alleged any equity or reason why said motion should not be allowed," etc. The plaintiff prayed the court to restrain the sale upon the ground that "there was a condition of depression throughout the entire country in finance and real estate, and business conditions generally were unprecedentedly bad, which conditions continue to exist at the present time; . . . that on account of the scarcity of money and poor market conditions, it was impossible to obtain the fair market value of lands at a judicial foreclosure or other forced or involuntary sale of same. . . . That if the lands are sold . . . at a forced sale at the present time, they will not bring their fair market value, and will do irreparable damage both to the plaintiffs and to the creditors of the Bolich Holding Corporation; that a delay for a reasonable time in foreclosing the deed of trust will do the defendants no damage,

for the reason that the loan is more than adequately secured; . . . that there are many indications that in a short time business conditions will have improved to such an extent that money will be available and property can be sold even at a forced sale at approximately its market value." The second ground upon which the plaintiffs requested post-ponement of sale was that the defendant, Nona S. Hanes, had con-tracted to pay off the mortgage indebtedness, and that while she was solvent, had declined and refused to comply with her .agreement.

From the judgment rendered the plaintiffs and the defendant, Nona S. Hanes and Bolich Holding Corporation appealed. Pending the appeal the trial judge restrained the commissioner from proceeding with the sale.

*Parrish & Deal for plaintiffs.*

*Manly, Hendren & Womble for Prudential Insurance Company of America and Wachovia Bank and Trust Company, trustee.*

BROGDEN, J. Does the depression or unprecedented scarcity of money for ordinary transactions or enforced stagnation of the real estate mar-ket constitute an equity sufficient to warrant a court in restraining the exercise of the power of sale in a deed of trust?

The power of a court of equity to restrain sales of real estate made in pursuance of the terms of a mortgage or deed of trust is undoubted, and the decisions of this Court disclose that the restraining power of equity in proper cases has been frequently exercised. However, the exercise of the beneficent powers of equity has usually been based upon allegations of fraud, restraint, oppression, usury, mistake or other facts disclosing unconscionable advantage. Unless such elements are alleged, the courts have refused to ,stay the exercise of the power of sale in a mortgage or deed of trust when all the necessary requisites of a valid sale have been observed and pursued. *Lumber Co. v. Conrades,* 195 N. C., ,626, 143 S. E., 138. It does not appear that this Court has heretofore discussed the particular question involved in this appeal. However, there are some old cases in other jurisdictions directly in point. For example, in 1871, the Virginia Court considered the question in *Muller v. Bayly,* 62 Va., 521. The Court said: "Then, what other ground of equity is there in the bill? Only the allegations that the time is unpropitious for a sale or was when the bill was filed; that money was scarce, and that owing to the large amount of the cash pay-ment required, the sale, if made as advertised by the trustee Bayly, would be attended with great if not irreparable loss and injury to the wife and her children. Certainly these allegations can afford no just

ground for enjoining the sale." To the same effect is the declaration in *Lipscomb v. N. Y. Life Ins. Co.*, 39 S. W., 465. The Court says: "However strongly our sympathies may be enlisted for the unfortunate victim of hard times, they cannot furnish a basis for equity jurisdiction; and such courts cannot and ought not to be made the instruments of speculation in the future values of property even for the benefit of the unfortunate." See, also, *Dunn v. McCoy*, 52 S. W., 21; *Muller's Admr. v. Stone*, 6 S. E., 223, 84 Va., 834; *Floore v. Morgan*, 175 S. W., 737, 41 C. J., 931, section 1353, 19 R. C. L., 618, section 434; Pomeroy, Vol. 4, p. 4041.

Perhaps no court is wise enough to declare with absolute finality that no economic or financial stringency or distress would warrant the intervention of equitable principles in restraining the power of sale in instruments securing debts, but certainly the mere allegations of general depression before the property has been sold and an unconscionable purchase price established, has not heretofore been deemed adequate to invoke equitable power.

It is contended that as the Bolich Holding Company has been placed in the hands of a receiver that the property is in *custodia legis,* and, therefore, subject to the control and discretion of the court. However, it has been decided in *Pelletier v. Lumber Co.*, 123 N. C., 596, 30 S. E., 855-1002, that even if property is in *custodia legis,* a court of equity has power to order a sale in its discretion for the reason "a court of equity is not required to retain possession of property when it would be inequitable to do so." Consequently the vacating of an injunction restraining the sale is equivalent to leave to proceed in the exercise of the power.

Affirmed.