JOHN E. MORRIS, *et al.*, v. A. F. WAITE, *et al.*

160 So. 516.
Division B.
Opinion Filed April 3, 1035.

*Sheppard & Clements,* for Appellants;
*E. Dixie Beggs,* for Appellees.

BUFORD, J.—The appeal in this case is from an order granting motion to strike certain portions of the answers of

defendants in a foreclosure suit. The stricken portions of the answer attempted to set up as a defense the numerous untoward results of the general financial depression and natural misfortune such as hurricanes, freezes and other devastating weather conditions which occurred and existed between the years 1926 and 1933 and prayed that the court take judicial notice of the alleged prevailing economic conditions and that by the reason thereof the market value of real estate in Florida, and particularly in Lee County, Florida, has been destroyed, and that the court enter an order staying the proceedings during the present economic depression under equitable terms and conditions, as to the application of rental income from the mortgaged premises to the payment of taxes, insurance and upkeep, etc.

There is no statute in this State which authorizes the court to fix conditions upon which a moratorium of a mortgage contract may be granted and, therefore, the courts are without authority to extend the period of redemption in mortgage foreclosure proceedings and to stay such proceedings during periods of economic depression.

The applicable law with which we are here concerned has been quite clearly stated by Mr. Chief Justice HUGHES in Home-Building & Loan Association v. Blaisdell, 78 L. Ed. 290, U. S. 298, 54 Sup. Ct. Rep. 231, 88 A. L. R. 1481, wherein he said:

"1. An emergency existed in Minnesota which furnished a proper occasion for the exercise of the reserved power of the State to protect the vital interests of the community. The declarations of the existence of this emergency by the Legislature and by the Supreme Court of Minnesota cannot be regarded as a subterfuge or as lacking in adequate basis. Block v. Hirsch, 256 U. S. 135, 65 L. Ed. 865, 41 S. Ct. 458, 16 A. L. R. 165, *supra*. The finding of the Legislature

and state court has support in the facts of which we take judicial notice. Atchison T. & S. F. R. Co. v. United States, 284 U. S. 248, 260, 76 L. Ed. 273, 280, 52 S. Ct. 146. It is futile to attempt to make a comparative estimate of the seriousness of the emergency shown in the leasing cases from New York and of the emergency disclosed here. The particular facts differ, but that there were in Minnesota conditions urgently demanding relief, if power existed to give it, is beyond cavil. As the Supreme Court of Minnesota said, the economic emergency which threatened 'the loss of homes and lands which furnish those in possession the necessary shelter and means of subsistence' was a 'potent cause' for the enactment of the statute.

"2. The legislation was addressed to a legitimate end, that is, the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society.

"3. In view of the nature of the contracts in question—mortgages of unquestionable validity—the relief afforded and justified by the emergency, in order not to contravene the constitutional provision, could only be of a character appropriate to that emergency and could be granted only upon reasonable conditions.

"4. The conditions upon which the period of redemption is extended do not appear to be unreasonable. The initial extension of the time of redemption for thirty days from the approval of the Act was obviously to give a reasonable opportunity for the authorized application to the court. As already noted, the integrity of the mortgage indebtedness is not impaired; interest continues to run; the validity of the sale and the right of a mortgagee-purchaser to title or to obtain a deficiency judgment if the mortgagor fails to redeem within the extended period, are maintained;

and the conditions of redemption, if redemption there be, stand as they were under the prior law. The mortgagor during the extended period is not ousted from possession but he must pay the rental value of the premises as ascertained in judicial proceedings and this amount is applied to the carrying of the property and to interest upon the indebtedness. The mortgage-purchaser during the time that he cannot obtain possession thus is not left without compensation for the withholding of possession. Also important is the fact that mortgagees, as is shown by official reports of which we may take notice, are predominantly corporations, such as insurance companies, banks, and investment and mortgage companies. These, and such individual mortgagees as are small investors, are not seeking homes or the opportunity to engage in farming. Their chief concern is the reasonable protection of their investment security. It does not matter that there are, or may be, individual cases of another aspect. The Legislature was entitled to deal with the general or typical situation. The relief afforded by the statute has regard to the interest of mortgagees as well as to the interest of mortgagors. The Legislation seeks to prevent the impending ruin of both by a considerable measure of relief.

"In the absence of legislation, the courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience. The 'equity of redemption' is the creature of equity. While courts of equity could not alter the legal effect of the forfeiture of the estate at common law on breach of condition, they succeeded, operating on the conscience of the mortgagee, in maintaining that it was un-

reasonable that he should retain for his own benefit what was intended as a mere security; that the breach of condition was in the nature of a penalty, which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal, interest and costs, notwithstanding the forfeiture at law. This principle of equity was victorious against the strong opposition of the common law judges, who thought that by 'the Growth of Equity on Equity the Heart of the Common Law is eaten out.' The equitable principle became firmly established and its application could not be frustrated even by the engagement of the debtor entered into at the time of the mortgage, the courts applying the equitable maxim 'once a mortgage, always a mortgage, and nothing but a mortgage.'

*"Although the courts would have no authority to alter a statutory power of redemption, the legislation in question permits the courts to extend that period, within limits and upon equitable terms, thus providing a procedure and relief which are cognate to the historic exercise of the equitable jurisdiction.* If it be determined, as it must be, that the contract clause is not an absolute and utterly unqualified restriction of the State's protective power, this legislation is clearly so reasonable as to be within the legislative competency." (Italics supplied.)

While it is true that "in the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair, or inadequacy of price was so gross as to shock the conscience," the exercise of this jurisdiction does not mean that without statutory provision the courts of equity may withhold the decree of foreclosure which is required to be granted in conformity with the con-

8

tract and the statutory law governing foreclosure. When a cause of this sort shall have proceeded to final decree it is clearly, by the weight of authority, within the jurisdiction and power of the chancellor, in the absence of any statutory provision to the contrary, to fix the date of forfeiture and foreclosure at such time and under such conditions as the facts in the case may show will be fair and equitable to all parties to the litigation. But under the law, as fixed by our foreclosure statutes we deem that the court of chancery may not withhold from the complainant in foreclosure suit the decree of foreclosure which is warranted under the law and facts merely because of adverse economic conditions and the resultant misfortunes of the defendant. The result of general adverse economic conditions must be assumed to operate on all alike and, therefore, that the mortgagor and mortgagee have come alike under the hardships incident thereto. Contracts of this character are made in anticipation of the fact that conditions may change and that the time may come when the mortgagee can only look to his security pledged in the mortgage for the payment of his debt and also that that security may have so depreciated in value as to be insufficient to bring the amount of his debt. The mortgagor enters into the contract not only agreeing to pay the debt but further agreeing as an evidence of his good faith and intention to pay the debt that if the debt is not paid at maturity the mortgagee shall have the right to enforce his pledge and to have the property described in the mortgage sold to pay the debt, or so much thereof as the pledged property will produce.

The time of payment is definitely fixed. If it is extended for any appreciable length of time it is impossible for man to foretell whether the extension will operate to the ad-

vantage and for the betterment of the mortgagor or of the mortgagee.

We must respect the sanctity of the contract, as did the court below, and affirm the order. It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., dissents in part.

BROWN, J. (dissenting in part).—I concur in the main with what is said in the majority opinion, but it seems to me that the court should not have stricken paragraph 8 of the answer, although it may not be deemed to have constituted a complete defense to the suit. The chancellor might well have considered this paragraph in connection with the matter of fixing the time of the sale. This paragraph of the answer set up practically the same economic conditions which the Supreme Court of the United States held to be sufficient to warrant the Legislature of Minnesota in its adoption of the moratorium statute, which was upheld, both by the Supreme Court of Minnesota and by the Supreme Court of the United States, and which case is cited and quoted from in the majority opinion. In that case Mr. Chief Justice HUGHES stated that: "In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales on equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience." In other words, the Court intimated that, in the absence of legislation on the subject, courts of equity could have granted the same relief without the moratorium statute. Quite a num-

ber of cases are cited in the footnotes to sustain his above quoted proposition.

I agree with the majority that there was nothing in the answer to bar the Chancellor from proceeding to ascertain the amount due on the mortgage and enter a foreclosure decree, but I do think that the stricken portion of the answer might well have been considered by the Chancellor in connection with the question as to whether or not, in view of the economic conditions prevailing in Ft. Myers and in the State and country at large, at the time, some reasonable postponement of the day of sale, so as to give the mortgagors some chance to refinance and save the property, could reasonably have been granted. It appeared from the stricken portion of the answer that the real or potential value of the property, as contrasted with the then market value, was several times greater than the amount of the mortgage; that it was business property, and bringing in some rentals, approximately $65.00 per month, which was being collected and retained by the mortgagee, the defendant mortgagor having agreed to that arrangement back in 1931, and that he was willing to continue to permit the mortgagee to collect and retain all rents from the premises so long as the court should deem necessary and proper. The balance due on the mortgage was about $3,625.00.

It thus appears that the mortgagees would not have been harmed by a stay of the foreclosure sale for a reasonable length of time, as they were already receiving all the income from the mortgaged premises and the mortgagors were willing for this to continue for such time as the court might fix.

In the majority opinion, that part of Chief Justice HUGHES' opinion in the Blaisdell case, to the effect that "the courts have no authority to alter a statutory period of

redemption," is italicized. However, that principle is not applicable here. We have no statutory period of redemption in this state. In Florida, default in the payment of the principal or interest on a mortgage does not divest the mortgagor of the legal title, and vest it in the mortgagee, leaving in the mortgagor only a statutory period in which to redeem it. With us, a mortgage is merely a lien on the land, and the title and the right of possession, with all the rents and profits that go with possession, remain in the mortgagor, and title is divested only by a sale under an order of a court of equity.

The whole matter of foreign foreclosures in this state is in the hands of our courts of equity, which are vested with full equity powers. Thus, equity will enforce the statutory policy of leaving the mortgagor in possession of the mortgaged property until after foreclosure and sale, as general rule, but if it becomes necessary to subordinate the mortgagor's possession in order to protect the equitable rights of the mortgagee, our courts of equity will exercise that power. See Pasco v. Gamble, 15 Fla. 562; Carolina Portland Cement Co. v. Baumgartner, 99 Fla. 987, 128 So. 241. And our courts of equity will prevent by injunction a mortgagor from impairing the value of the property embraced in the mortgage lien on which the mortgagee has a right to rely for the security of his debt. Logan v. Slade, 28 Fla. 609, 10 So. 25. If, therefore, our courts of equity can, as they have done, extend the use of their broad equitable powers to protect the rights of the mortgagee, there should not be anything shocking about the idea of a reasonable exercise of those same broad equitable powers to also protect the rights of the mortgagor in proper cases. The undoubted right of a court of equity to set aside a foreclosure sale, where the amount of the bid is grossly in-

adequate, is well settled, and if it has this power, certainly it has the power to make some postponement of a sale when, to make an immediate sale, under the then existing conditions, would be bound to result in such gross inadequacy of price as to require the sale to be set aside.

For these reasons, I do not think that the stricken portions of the answer were entirely irrelevant to this matter of fixing the time of the foreclosure sale, and that the Chancellor should have permitted that portion of the answer to stay before him for consideration in that connection. While the specific prayer for stay of the proceedings during the pendency of the present economic depression could not be considered, as no one could tell when it would end, there was also a general prayer for relief in that connection under which the court might have granted some reasonable stay of the time of the sale, say for a few weeks or a few months, if it appeared to the Chancellor that an early sale would result in a great sacrifice of the property, and that by postponing the sale for a few weeks or a few months, the mortgagors might be able to refinance the property, and pay off the mortgage debt, thus exercising the equity of redemption which is recognized in this State and save themselves from great loss and at the same time secure to the mortgagee the full amount of the debt, the mortgagees meanwhile being given all the income from the property to apply on interest and principal.

While courts of equity have no right to administer justice upon the mere individual conception of the Chancellor as to what constitutes "natural justice" in the particular case, but should administer it according to the well established precedents and principles of our system of equity jurisprudence, yet the fact remains that rules of administration and procedure in equity are ordinarily sufficiently elastic

to enable the court to do equity in the particular case which may be under consideration. Cox v. Burgess, 139 Ky. 699, 96 S. W. 577; Thatcher v. Thatcher, 117 Me. 331, 104 Atl. 515; Daland v. Williams, 101 Mass. 571. It is a fact that while the principles of equity jurisprudence are quite well and firmly established, its rules of administration are more flexible than those which obtain in actions at law. Blackstone said that "Equity is the correction of that wherein the law, by reason of its universality, is deficient." There is yet some truth in that statement, even though we have passed beyond the time when equity, as "a court of conscience," would presume to proceed on the basis of the views of the particular Chancellor, as to what he thinks ought to be done in the particular case, without any regard to the well established principles of equity jurisprudence, which would, as has been said, make the decision in any equity case as variable as "the length of the Chancellor's foot." But the fact remains that there still exists, in the system of equity jurisprudence, a certain amount of elasticity in its practice and administration which permits equity courts, in many instances, to "do equity" in the particular case, in conformity with the principles of equity which have been worked out throughout the past several centuries. There yet remains some difference between equity practice and common law practice. And I think this might be recognized in this case.

It is interesting to note a remark made by the Supreme Court of North Carolina, in the case of J. A. Bolich, Jr., *et ux.,* v. Prudential Insurance Company of America, *et al.,* 202 N. C. 789, 164 S. E. 335, 82 A. L. R., 974, decided June 15, 1932. This case is adverse to the appellants but the court said (82 A. L. R. text 976):

"Perhaps no court is wise enough to declare with absolute finality that no economic or financial stringency of dis-

tress would warrant the intervention of equitable principles in restraining the power of sale in instruments securing debts * * *."

On December 1, 1932, the Supreme Court of South Carolina rendered an opinion in the case of Columbia Theological Seminary v. Arnette, *et al.,* reported in 167 S. E. 465. This was a case involving the foreclosure of a mortgage and the court took occasion to say:

"(8) As to a sale of the mortgaged premises during the present great financial depression existing throughout the whole country, we deem it not out of place for this court to say that we think it is not only within the power of the circuit judge, sitting as a chancellor in equity, to take present conditions into consideration, but that it is right for him so to do in fixing the time for the sale. The court of equity was established for the purpose of giving relief that is equitable, not only to plaintiffs, but to defendants in that court. The defendants in mortgage foreclosure cases, especially those whose homes are involved, who are without fault of their own, but on account of the country's condition are unable to meet their obligations, and the infant defendants in this cause certainly come within that class, are entitled to much consideration and such relief as it is proper for equity to give them, just as the plaintiff is entitled to consideration and relief. See Southern Trust Co. v. Cudd, 166 S. C. 108, 164 S. E. 428, as to similar expressions of this court. The fixing of the time of sale of mortgaged premises is almost entirely with the discretion of the circuit judge, and he may, in his decree, fix reasonable conditions. We are confident that the judge who finally fixes the time of sale in this case will take into proper consideration the rights and circumstances of the defendants, and that his

decree, with proper conditions stated therein, will protect those rights."

Some of the other cases bearing on this question are as follows:

Suring State Bank v. Ernestine Giese, 246 N. W. 556, Wis., 85 A. L. R. 1477 (Ann. 1480).

John H. Blaisdell v. Home Building & Loan Association, 249 N. W. 334, Minn. 86 A. L. R. 1507.

State of North Dakota, *ex rel.* Harry C. Cleverings v. E. M. Elien, Sheriff, 249 N. W. 118, N. E., 86 A. L. R. 1523 (ann. 1539).

Arthur T. Vanderbilt, Trustee, v. Brunton Piano Co., 169 Atl. 177, N. J. 89 A. L. R., 1080 (ann. 1087).

For the reasons given, I think the court below erred in granting the motion to strike and that the cause should be reversed and remanded.