253 So.2d 136 (1971)
James Madison GUYNN and Elizabeth Johnson Guynn, His Wife, Appellants,
v.
BRENTMOORE FARMS, INC., a Corporation Organized and Existing under the Laws of the State of Florida, Appellee.
No. O-211.
District Court of Appeal of Florida, First District.
September 16, 1971.
Rehearing Denied October 22, 1971.
Harold B. Haimowitz and Hugh M. Davenport, Jacksonville, for appellants.
Gary B. Tullis, of Ulmer, Murchison, Ashby & Ball, Jacksonville, for appellee.
RAWLS, Judge.
By this appeal, appellants challenge an adverse final judgment dismissing their suit to accelerate and foreclose a mortgage. Two points are presented for our consideration: (1) The court erred in not allowing acceleration and foreclosure; and (2) The amount of attorney's fees allowed to appellants was insufficient.
On April 9, 1969, appellee, Brentmoore Farms, Inc., executed a note in the sum of $110,000.00, payable to appellants at St. Johns River Bank, Jacksonville, Florida, in annual principal installments of $3,666.66 together with interest at 6%, beginning on the 9th day of April 1970, and secured by a mortgage on some 761 acres. The form mortgage has two paragraphs typed in bold print; one provides that all sums received by the mortgagor from sale of livestock and timber be paid to mortgagees upon receipt thereof, and the other provides for releases in units of not less than one acre for the consideration of $300.00 per acre.
Prior to April 9, 1970, Brentmoore sold timber and livestock from the mortgaged property for the aggregate sum of $38,593.66, which it delivered to appellants. The principal and interest payment due on April 9, 1970, was not paid. Appellants notified Brentmoore on May 4, 1970, of *137 the default, and by this notice elected to accelerate the balance due. Complaint was filed on May 7, 1970.
By its answer filed June 25, 1970, Brentmoore asserted: It had paid the mentioned $38,593.66 and assumed the principal payments would be applied against the annual installments; simultaneously with the filing of its answer, Brentmoore paid $10,000.00 into the registry of the court (which is more than the April 9 installment plus reasonable attorney's fees); no harm has been done to the security and the security for the mortgage far exceeds the balance; plaintiffs did not demand payment of the annual installment; plaintiffs, by acceleration, are seeking to recover immediately the full amount of principal which would not be completely paid under terms of the note for over 18 years; and "Under the present conditions of the money market, it would work an extreme hardship on Brentmoore to be forced to pay the entire balance due on the mortgage in order to avoid forfeiture of the mortgaged property." An affidavit, executed by Gordon Brent, president of Brentmoore Farms, Inc., substantially tracking the answer, was filed by Brentmoore in opposition to the motion for a summary judgment of foreclosure Brentmoore also filed a copy of a letter dated May 11, 1970, addressed to appellants' attorney and signed by Gordon Brent. This letter stated in part:
"Following up on our conversation of this afternoon; as the principal stockholder in the Brentmoore Farms, Inc., I should have contacted Mr. and Mrs. Guynn personally about their payment which is past due. I was depending on Bob Pitts Enterprises to whom I had sold a portion of the property under contract. Each week for the past four weeks I have called them and they have assured me that they were in almost daily contact with Mr. Guynn through their representative in Jacksonville, Mr. Eddie Bowers. They assured me that Mr. Guynn was happy and willing to wait until they received the funds from a loan they are closing this month on other property.
"During the time that the timber was being cut from the Guynn property and the cattle sold and credits applied against the note, I was in contact regularly with the St. Johns River Bank, who I understand holds the note for Mr. Guynn. The bank knew I was taking care of any problems on the property and I cannot understand why I was not given some kind of notice that all was not well in Mr. Guynn's mind."
In opposition to Brent's affidavit, appellant James Guynn filed an affidavit stating in substance that one day prior to date the first installment was due (April 9, 1970) he was advised by an agent of Brentmoore that the payment would be at plaintiff's bank no later than Saturday, April 11, 1970; in subsequent conversations with this agent he was advised that the installment was "on the way"; and approximately one month prior to April 9, 1970, he received a request for information as to the amount of principal and interest due from a firm of attorneys located in Memphis, Tennessee, on behalf of their client, Brentmoore, and he responded by advising that St. Johns River Bank, Jacksonville, Florida, held the note for collection and information regarding the amount due could be obtained from them.
The trial judge, after reviewing the documentary evidence, entered a final order of dismissal of the cause, which provided, inter alia:
"* * * It is also freely admitted by all parties concerned that the annual installment called for in said mortgage, payable April 9, 1970, has not been paid; however from all the circumstances surrounding the execution, the payments and the wording of the mortgage, the Court finds it would be unconscionable to allow the acceleration and foreclosure of this mortgage."
We do not agree, and reverse.
*138 We are here presented with an acceleration clause set out in a mortgage which confers a contract right upon the mortgagee which he may elect to enforce upon a default. Treb Trading Co. v. Green, 102 Fla. 238, 135 So. 510, and 102 Fla. 238, 136 So. 688 (Fla. 1931). Campbell v. Werner, 232 So.2d 252 (Fla.D.C.A.3d 1970),[1] is controlling. There, in a scholarly opinion Judge Charles Carroll, speaking for our sister court, thoroughly reviewed the case law of this jurisdiction pertaining to the subject matter of the instant cause, and analyzed the factual basis upon which decisions were rendered in declining to enforce contractual right of a mortgagee to accelerate. As stated in Campbell, "The decisions disclose that foreclosure on an accellerated basis may be denied where the right to accelerate has been waived or the mortgagee estopped to assert it, because of conduct of the mortgagee from which the mortgagor (or owner holding subject to a mortgage) reasonably could assume that the mortgagee, for or upon a certain default, would not elect to declare the full mortgage indebtedness to be due and payable or foreclosure therefor. * * *"
Here, the only basis for denying a foreclosure of the accelerated balance of the debt is upon the ground that the mortgagees are estopped from asserting their contractual right. We pose the query: Why would it be unconscionable to allow the acceleration and foreclosure of this mortgage? The note clearly provided the date and place of payment. The major stockholder of the mortgagor had transacted business for several years with the bank holding the note for collection. By his letter of May 11, 1970, this major stockholder stated that (1) he knew the payment was due, and (2) he had depended upon his nominee (Bob Pitts Enterprises) to make the payment. In no instance is a single material act or fact alleged to have been taken by the mortgagees that resulted in a detriment to the mortgagor. The prepayments provided for in this mortgage were not of a voluntary nature as was the case in Gulf Life Insurance Co. v. Pringle, 216 So.2d 468 (Fla.D.C.A.2d 1968), but rather in the instant cause, by contractual agreement in bold typewritten print, the prepayments were required to be made.
It is well established in this jurisdiction that a debtor must seek his creditors. A time-honored maxim "Equity abhors a forfeiture" is not applicable. Brentmoore emphasizes in its brief that "the property was worth far more than the balance of the mortgage." Appellants introduced into evidence copies of corporate minutes of Bob Pitts Enterprises, Inc. and Brentmoore Farms, Inc. reflecting that Pitts had agreed to buy 480 acres of the subject property for the sum of $100,800.00, payable in two years. Forfeiture is not involved. What is involved here, as was termed in oral argument, is "a battle of interest rates." Such battle is not a legal basis for the *139 courts of Florida to fail to respect and enforce the obligation of contracts.
Finally, we consider the question of the amount of fees awarded to appellants' attorneys. The sum allowed by the trial judge, to say the least, is parsimonious. In view of the conclusion reached herein, the cause is reversed and remanded with directions that the trial court, upon entering a final judgment, take into consideration the successful prosecution of the instant appeal when determining the sum to be allowed appellants for their attorneys.
Reversed.
CARROLL, DONALD K., Acting C.J., and MASON, ERNEST E., Associate Judge, concur.
NOTES
[1] Footnote 2 at p. 256 in Campbell v. Werner, supra, is quoted here because it is particularly applicable to the instant cause:

"2. `In the early history of equity jurisprudence when the chancellor was the mouthpiece of the crown and his prerogatives and duties were loosely understood and his decrees could not be resisted, he sometimes acted on the dictates of conscience and what appeared to be natural justice, but today the rules and maxims governing courts of equity are as definite and certain as those governing other tribunals and by them the chancellor is bound rather than by what he conceives to be right and just in a particular case. 10 R.C.L. 262.' Home Owners Loan Corporation v. Wilkes, (1938) 130 Fla. 492, 178 So. 161, 163.
"In that case it was held that a showing by the mortgagor of economic misfortune, his unemployment and inability to work would not justify denial of the mortgagee's right to enforce the mortgage contract. Also, in Morris v. Waite, (1935) 119 Fla. 3, 160 So. 516, the court rejected a contention of a mortgagor that it would be unconscionable to enforce a mortgage contract for a showing of personal misfortune of the mortgagor, induced by and coupled with an economic depression."