478 So.2d 1083 (1985)
Jimmy HATCHER, Appellant,
v.
B.K. ROBERTS, John S. Miller, Jr., et al., Appellees.
RED CARPET CORPORATION OF PANAMA CITY BEACH, Appellant,
v.
B.K. ROBERTS, John S. Miller, Jr., et al., Appellees.
Nos. AV-63, AV-64.
District Court of Appeal of Florida, First District.
August 20, 1985.
Rehearing Denied November 20, 1985.
Rehearing Denied December 23, 1985.
*1084 Jimmy Hatcher, pro se.
R. Vinson Barrett, Tallahassee, for appellant Red Carpet.
Jerome M. Novey and Robert D. Mendelson of Novey & Mendelson, Tallahassee, for appellees.
ZEHMER, Judge.
Appellant Red Carpet Corporation of Panama City Beach (Red Carpet) appeals a final summary judgment entered in favor of appellees in Red Carpet's legal malpractice action. In a related case, appellant Jimmy Hatcher appeals from the trial court's denial of his motion to intervene in the Red Carpet proceeding on the ground that his motion was untimely filed. The cases were consolidated on appeal, were heard together at oral argument, and are disposed of in this opinion.
Four issues are raised on appeal. With regard to the Red Carpet's appeal, the issues are as follows:
(1) Whether the trial court erred in granting appellees' motion for summary judgment by finding as a matter of law that appellee John S. Miller was not negligent in his representation of Red Carpet.
(2) Whether the trial court erred in granting appellees' motion for summary judgment by finding that Red Carpet's malicious prosecution count was barred by collateral estoppel and by no showing of lack of probable cause.
(3) Whether the trial court erred in granting appellees' motion for summary judgment by finding, as a matter of law, that John S. Miller's actions did not constitute an abuse of process and that this count was merely an attempt by Red Carpet to expand upon the malicious prosecution claim in count 2.
With regard to Jimmy Hatcher's appeal, the issue presented is whether the trial court abused its discretion in denying Hatcher's motion to intervene and participate in the hearing on the motion for summary judgment against Red Carpet. We affirm all points presented in both cases.
In July 1976 John S. Miller was retained by Red Carpet to represent it in chapter 11 bankruptcy proceedings. Part of Red Carpet's bankruptcy estate was 300 feet of beachfront property on Panama City Beach, formerly the site of a motel which was destroyed in a 1975 hurricane. The property was mortgaged, with annual payments of $28,000, and these payments were current when the motel was destroyed. The mortgage required the mortgagor to *1085 maintain insurance on the property, but did not direct how any insurance proceeds received by the mortgagee were to be credited against the mortgage.
On or about March 4, 1976, before retaining Miller, Red Carpet delivered a check for $141,000 to the mortgagees of the beachfront property, representing the amount of insurance proceeds from destruction of the motel. The record contains no evidence of any instructions or agreements as to how the money was to be applied against the mortgage. The mortgagees chose to apply the proceeds to the end of the mortgage debt, i.e., reduce the balance of the mortgage note. As a result, when Red Carpet failed to make the next annual payment of $28,000 when due, the mortgagees declared the mortgagor in default and instituted foreclosure proceedings. Miller, having been retained by Red Carpet to defend the foreclosure, answered the complaint by alleging an affirmative defense that the $141,200 constituted prepayment of mortgage installments on the front end of the mortgage debt. Subsequently this affirmative defense was withdrawn by Miller as counsel for Red Carpet. Miller contends that the defense was withdrawn because of a number of factors, primarily the fact that Red Carpet, through its president and sole stockholder, Jimmy Hatcher, instructed him to withdraw the defense. Red Carpet takes the position that the prepayment defense was withdrawn by Miller solely upon Miller's independent and incorrect determination that the defense could not possibly succeed. In any event, no appearance was made by Miller at the foreclosure hearing, and a final judgment of foreclosure was entered on January 31, 1978.
Subsequently, Jimmy Hatcher became dissatisfied with Miller's representation of Red Carpet and, on April 29, 1979, wrote Miller a letter accusing him of malpractice and threatening to sue him. On May 11, 1979, Miller filed an attorney's fee application with the bankruptcy court seeking $25,000 in fees for representing Hatcher personally in a personal chapter 11 bankruptcy proceeding filed by Hatcher. On May 29, 1979, Miller, as a creditor of both Hatcher personally and Red Carpet, filed "applications for adjudication" in bankruptcy court to adjudicate both Hatcher and Red Carpet bankrupt under chapter 7 because he believed as a creditor that the chapter 11 proceedings as to both Hatcher and Red Carpet could not succeed. Finally, in August 1979, Miller sued Hatcher and his wife personally for a $5,000 attorney's fee incurred in defending Hatcher's wife in another separate foreclosure proceeding. In this suit, the Hatchers counterclaimed for breach of contract and abuse of process, alleging that Miller's suit was merely filed in retaliation for Hatcher's threats to sue Miller for legal malpractice in the Red Carpet case. The court considered the Hatchers' counterclaim and, on December 21, 1979, entered final summary judgment against the Hatchers, stating there was no evidence that Miller's suit had been instituted "willfully without probable cause and with malice." This final summary judgment on Hatcher's counterclaim was affirmed on appeal without opinion. Hatcher v. Miller, 392 So.2d 70 (Fla. 1st DCA 1980).
As a result of the foreclosure of Red Carpet's beach property and the various bankruptcy pleadings filed by Miller against Red Carpet and Hatcher, Red Carpet sued Miller and his law firm in a three-count complaint filed September 29, 1981. Count 1 alleged that Miller was negligent in not presenting the prepayment defense to the foreclosure suit, which resulted in the loss of Red Carpet's property. Count 2 alleged that Miller's various filings in the bankruptcy proceedings constituted malicious prosecution designed to punish and discredit Red Carpet. Count 3 alleged that Miller's actions in the bankruptcy proceedings constituted abuse of process and that Miller was attempting to extort Red Carpet into not prosecuting a malpractice action against him.
Miller and his law firm moved on August 10, 1982, for partial summary judgment as to counts 2 and 3 of Red Carpet's complaint, urging a theory of collateral estoppel. They argued that Red Carpet was, in reality, the same entity as the Hatchers *1086 since Jimmy Hatcher was the president and sole stockholder of Red Carpet; that the issues of malicious prosecution and abuse of process were decided adversely to Hatcher in the August 1979 lawsuit which resulted in final summary judgment against the Hatchers' counterclaim; and that such decision should collaterally estop Red Carpet from raising the same issues. On December 17, 1982, the trial court granted the motion for summary judgment as to the law firm, but not as to Miller, finding that the issues raised had been settled adversely to Red Carpet in the prior Hatcher v. Miller suit. This trial court order was appealed and affirmed in Red Carpet Corp. v. Roberts, 443 So.2d 377 (Fla. 1st DCA 1984).
On April 21, 1983, Miller and the law firm filed a motion for summary judgment in this action as to count 1 and Miller personally filed a motion for summary judgment as to counts 2 and 3. The trial court granted the motions in their entirety. As to count 1, the court ruled that the prepayment defense to the foreclosure action would not have prevailed even if Miller had pursued it; therefore, Miller was entitled to judgment as a matter of law on the legal malpractice count. With respect to count 2, the court found that the doctrine of collateral estoppel applied since the issues had already been decided adversely to Hatcher in prior cases. Finally, with respect to count 3, the court found that as a matter of law there was no abuse of process by Miller and that this count was merely a restatement and expansion of count 2. Red Carpet has appealed this final summary judgment.
On July 26, 1983, one day before final arguments were heard on Miller's April 21 summary judgment motion, Hatcher, individually, moved to intervene in that hearing as an unsecured creditor of Red Carpet. The motion was denied by the trial court on the basis that the motion was untimely. Hatcher has appealed this order denying intervention.
Regarding Hatcher's appeal, we find no abuse of discretion by the trial court in denying Hatcher's motion to intervene in the hearing on the motion for summary judgment for the reason cited by the trial court.
With respect to issues 2 and 3 in Red Carpet's appeal, we find no error in the trial court's rulings. The reasons set forth by the trial court are legally sufficient to support summary judgment for appellees. We believe, however, that Red Carpet's first issue merits discussion.
In support of its legal malpractice claim in count 1, Red Carpet argues that appellees failed to carry their burden of proving that, under all the facts, circumstances, and law existing at the time of the foreclosure suit, the prepayment defense asserted and then withdrawn in the foreclosure proceeding could not possibly have succeeded, even with diligent preparation and litigation by Miller. Red Carpet maintains that the prepayment defense was viable and could have succeeded pursuant to the Florida Supreme Court's decision in Ott v. Bray, 114 Fla. 547, 154 So. 209 (1934). Red Carpet attempts to distinguish the various cases relied upon by appellees and the trial court in reaching the conclusion that the prepayment defense, as a matter of law, could not have succeeded in preventing foreclosure of the beachfront property owned by Red Carpet. Further, Red Carpet discusses numerous cases from other jurisdiction which it maintains support its position that the prepayment defense is viable and should have been presented by Miller in the foreclosure proceeding.
Appellees rely on the following Florida district court of appeal decisions to establish as a matter of law that at the time of the foreclosure proceeding the prepayment defense could not have succeeded in preventing foreclosure. Atlantic & Gulf Properties, Inc. v. Palmer, 109 So.2d 768 (Fla. 3d DCA 1959); Guynn v. Brentmoore Farms, Inc., 253 So.2d 136 (Fla. 1st DCA 1971); Gulf Life Insurance Co. v. Pringle, 216 So.2d 468 (Fla. 2d DCA 1969); and Charnock v. Dieleman, 421 So.2d 758 (Fla. 4th DCA 1982). Further, appellees distinguish Ott v. Bray, 154 So. 209, and argue *1087 that the various out-of-state cases cited by Red Carpet are irrelevant since the issue is controlled by Florida law.
A legal malpractice cause of action has three elements: (1) The attorney's employment and (2) his neglect of a reasonable duty, which (3) is the proximate cause of loss to the client. Drawdy v. Sapp, 365 So.2d 461 (Fla. 1st DCA 1978). There is no dispute as to Miller's employment by Red Carpet, so the first element has been satisfied. With respect to the second element, neglect of a reasonable duty, this is ordinarily a factual issue upon which reasonable persons may differ. There are numerous provisions in the Code of Professional Responsibility which define the duty of an attorney as it relates to the presentation of affirmative defenses in a client's case. Fla.Bar Code Prof.Resp., D.R. 7-102(A)(1) and (2); E.C. 7-3, 7-4, 7-5, 7-7, and 7-8. We conclude, however, that whether Miller neglected a reasonable duty with respect to the presentation of the prepayment defense in the foreclosure proceeding is intricately tied to our resolution of the third element, proximate cause. We affirm the trial court's granting of summary judgment because the third element, proximate cause, fails for the reason that, as a matter of law, the prepayment defense could not have prevailed.
Red Carpet relies upon the Supreme Court decision in Ott v. Bray, 154 So. 209, as the basis for its contention that the prepayment defense could have succeeded. In that case the Otts, as mortgagors, assigned a judgment to the mortgagee, Bray, as additional collateral in return for an agreement by the mortgagee to extend and renew a mortgage. Before any payments under the renewal agreement actually matured, the judgment which had been assigned to Bray was collected by the Otts and a portion of the proceeds was paid over to Bray. The document assigning the judgment as collateral provided that any and all sums received by the mortgagee as a collection on the judgment should be immediately applied in payment for reduction of the mortgage and indebtedness represented by the renewal obligation. The mortgagee, Bray, chose not to apply the funds so as to anticipate the first maturing payments, but applied the funds to the last maturing payments on the note so as to simply reduce the total amount of the mortgage debt. When the first maturing payments were not thereafter made by the mortgagors, Bray sought foreclosure. The Otts proved by competent evidence that fifteen days after the funds were delivered to Bray, a representative of the Otts requested that the funds be applied to the mortgage so that all payments scheduled to mature during that year and the next year would be absorbed by distribution of the funds. The Florida Supreme Court held that the mortgagors had the right to direct application of the funds to the first maturing payments on the mortgage and that the mortgagee could not ignore these instructions and choose to apply the funds simply to reduce the mortgage debt.
We agree with Red Carpet that Ott v. Bray, 154 So. 209, would be controlling if there was any basis in the record to find that the $141,000 was delivered by Red Carpet or Hatcher to the mortgagee with instructions directing specific application of the funds in the manner contended by Red Carpet. But the record simply does not support any genuine issue that the mortgagee was instructed how to apply the insurance proceeds to the mortgage debt.
We recognize that in a summary judgment proceeding the movant has the burden of proving the complete lack of any genuine issues of material fact. The pertinent principles are well stated in Connell v. Sledge, 306 So.2d 194, 196 (Fla. 1st DCA 1975):
Summary judgments are governed by the provisions of Rule 1.510 RCP. Summary judgment proceedings may not be used as a substitute for a trial. (Farrey v. Bettendorf, Sup.Ct.Fla. 1957, 96 So.2d 889) A summary judgment proceeding is not a trial by affidavit or deposition. (Weinstein v. General Accident Fire & Life Assur. Co., Fla.App. 1st 1962, 141 So.2d 318) A summary judgment may *1088 be granted only in cases where there is no issue of material fact. (Williams v. City of Lake City, Sup.Ct.Fla. 1953, 62 So.2d 732) The allegations of the complaint (when the defendant moves for summary judgment) must be accepted, for the purposes of the motion, as true. (White v. Pinellas County, Sup.Ct.Fla. 1966, 185 So.2d 468) The burden is upon the party moving for summary judgment to establish that there is no issue of material fact and that he is entitled to a judgment as a matter of law. (Hughes v. Jemco, Inc., Fla.App. 1st 1967, 201 So.2d 565) If the pleadings, depositions, answers to interrogatories, admissions, affidavits and other evidence in the file raise the slightest doubt upon any issue of material fact then a summary judgment may not be entered. (Williams v. City of Lake City, supra; Crovella v. Cochrane, Fla.App. 1st 1958, 102 So.2d 307) A party against whom a summary judgment is sought is not required to file a counter affidavit in order to defeat the motion. (Williams v. City of Lake City, supra; National Exhibition Company v. Ball, Fla.App.2d 1962, 139 So.2d 489; Williams v. Board of Public Instruction, Sup.Ct.Fla. 1952, 61 So.2d 493).
However, if the pleadings, depositions, answers to interrogatories, admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law then the motion for summary final judgment must be granted. (Rule 1.510 RCP; 30 Fla.Jur., Summary Judgments, Sections 6-9, and the many cases there cited).
Although, as above stated, the burden is upon the party moving for summary judgment to establish the absence of any issue of material fact and the party against whom summary judgment is sought is not required to file any opposing affidavits, he has the right so to do and if the contents of the file, specifically the items referred to in Rule 1.510 RCP, establish no issue of material fact then it does become incumbent upon the party against whom the judgment is sought to demonstrate, by affidavit or otherwise, the existence of an issue of material fact in order to avoid having a summary judgment rendered against him. [Emphasis added.]
At oral argument of this case, we specifically questioned counsel for both parties about the existence in the record of any evidence that the insurance proceeds had been delivered to the mortgagee with instructions as to how they should be applied. In response, counsel for appellees indicated there was no evidence in the record that either Jimmy Hatcher or Red Carpet had instructed the mortgagee on how to apply the funds, but that it made no difference since the mortgagee had the absolute right under the mortgage terms to apply the funds in any manner it desired. In response to the same question, counsel for Red Carpet indicated that he was uncertain, but he thought there was a statement in Jimmy Hatcher's deposition indicating that Hatcher had instructed the mortgagee how to apply the funds. Counsel further stated, however, that it would make no difference whether such instruction had been given because this case is governed by equity and it would be inequitable to apply the funds as done by the mortgagee and then attempt to foreclose on the property.
We have carefully and thoroughly reviewed the record for any basis to find a disputed issue regarding the giving of instructions to the mortgagee. We have found none, save only Red Carpet's legal memorandum in response to appellees' motion for summary judgment, which contains the assertion that an instruction on application of the insurance proceeds was given by Jimmy Hatcher to the mortgagees. But even that memorandum admits that evidence of such instruction "does not appear in the record" (Vol. III, R. 84). This assertion in a legal memorandum is insufficient to raise a genuine issue of material fact since the memorandum does not amount to a pleading, a deposition, an answer to interrogatories, an admission, or an affidavit.
*1089 Red Carpet's theory of its case, both in the lower court and on appeal, has been that the prepayment defense could have succeeded in preventing foreclosure because the court in the foreclosure proceeding would have applied equitable principles and determined from all the facts and circumstances that it was unfair to allow the mortgagees to apply the $141,000 to the end of the debt and then foreclose on the property upon default of the next payment. This equitable argument was stressed by counsel for Red Carpet in oral argument and has been stressed in the briefs on appeal. The record does not reveal that Red Carpet's primary legal theory has ever been founded on a factual assertion that instructions were given by Hatcher to the mortgagees.
Red Carpet's amended count 1 alleging legal malpractice contends that "Miller raised the issue of whether the $141,000 in insurance proceeds would be deemed to have prepaid the yearly payments on the mortgage," but that he later improperly withdrew this defense (Vol. III, R. 4). There is no allegation that instructions were given by Hatcher concerning application of the funds, nor is there any allegation indirectly suggesting that Red Carpet's position is based on that fact. Rather, use of the phrase "would be deemed" suggests reliance on a principle of law that would cause this result.
In the deposition of Hatcher taken on June 8, 1982, the following questions and answers related to Hatcher's delivery of the $141,000 check to the mortgagees.
Q. Okay, sir. When did you deliver that check to the Wests or their attorney; do you recall?
A. It was a good little bit after the Calvert people delivered it to Red Carpet. I can't recall just how long, but we held the checks a good while.
Q. Would it have been prior to your retaining Mr. Miller to represent you?
A. I delivered it prior to that, yes. It had already been delivered.
Q. Under what circumstances did you deliver it to the Wests or their attorney, and tell me specifically who you did deliver it to.
A. I don't remember who I delivered it to. I don't remember whether I gave it to Walt himself, or whether I gave it to Bill Harris, but I gave it to one or the other of those two.
Q. Did you have any discussions or agreements with them in writing or otherwise relating to delivering that check to them, sir?
A. I can't remember any if I did. I haven't reviewed the files in no telling when, and I can't be  I would like to be specific on everything if I can, but I don't remember. I can't say I did, and I can't say I didn't, but I don't remember any agreement in writing. I know that I really didn't want to accept this check, and I do remember that they wrote me a threatening letter regarding, I believe, foreclosure if I didn't turn it over or suit. I was actually holding it thinking of returning it to Calvert.
Q. So, you did deliver it either to the Wests or their attorney?
A. Right.
Q. And there was no written agreements as to how these proceeds would be applied; is that correct?
A. I said I couldn't remember signing any written agreement.
Q. Did you make any agreements with them, sir?
A. I don't remember making any. I remember that I discussed with probably Bill Harris the wisdom of taking that money because it was a total agreement with Calvert, and they hadn't fulfilled that agreement.
Q. That was on other insurance proceeds that the Wests would not have been entitled to; is that correct, the total agreement?
A. That's right.
Q. That's part of your litigation today; is that correct?
A. That is part of the litigation today.
Q. Okay, sir.

*1090 A. But I remember discussing with Bill Harris that I thought it was unwise to go ahead and accept that $141,000, or I questioned the wisdom of it. There was a discussion. I don't remember what went on, but I was reluctant to take the money from Calvert. But they were pressuring for it.
(Vol. I, R. 71-73).
It is apparent from this testimony that Hatcher was much more concerned with whether the $141,000 was sufficient and should be accepted by Red Carpet than with how the funds should be applied by the mortgagee. Nothing in this testimony creates factual issue concerning instructions on application of funds given by Hatcher.
In Miller's deposition, taken June 29, 1982, the following testimony occurred:
Q. So, basically, the only recollection you have of doing any research is that after you had done the research, you felt there was some chance that your affirmative defense could prevail, but you don't recall what you based that on?
A. Yes, I recall.
Q. What did you base it on?
A. One, the mortgage itself didn't make any statement of any prepayment. It didn't say whether it would be made here or there. I thought if they prepaid the mortgage, they would be responsible for anything that would be in the mortgage that had occurred. You had to face the fact that the taxes hadn't been paid. Even if they had been advance payments, then they would have applied to the taxes.
There was a second mortgage. The matter was still in default; however, the real key to it was Bill Harris showed me a letter Jimmy Hatcher's attorney had written to him saying these funds will be applied to the tail end. They would not be applied to the front end. That was pretty much the key when Mr. Hatcher said, `Let's forget about.'
Q. Do you have a copy of that letter?
A. Sure do. I didn't bring it with me.
Q. That was a letter from whom to whom?
A. If I'm not mistaken, that was from  what was that guy's name over there that represented Mr. Hatcher during that period of time? I can't recall his name. It was either from Bill Harris to him or from him to Bill Harris, one or the other.
Q. Would that have been a letter between Bill Harris and Charlie Hilton?
A. One or the other.
Q. And it is your statement today then that in that letter Charlie Hilton indicated that it was his understanding that the money would be insurance?
A. One to the other. I don't recall which one the letter went to. It was an agreement that had been made at the time there that when Mr. Hatcher turned the check over to them, that they fully understood that money was in no way to be applied to the advance payments. It was to be applied to the rear.
This property had been destroyed. They didn't have the security they had originally; therefore, that money would not be applied as advance payments. It would be applied as rear payments.
Q. Was this something in the nature of a stipulation or a contractual agreement?
A. That was what my understanding of it was.
(Vol. I, R. 215-217.)
Miller's sworn testimony as to the existence of a written agreement providing that the funds would not be applied by the mortgagee as advance payments is uncontradicted by any other evidence in the record and indicates that there is no genuine issue of fact on this question. As stated in Connell v. Sledge, 306 So.2d at 196, if the existence of a genuine issue of material fact is not evident from the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record, then it is incumbent on the party against whom judgment is sought to "demonstrate, by affidavit or otherwise, the existence of an issue of material fact in order to avoid having a summary judgment rendered against him." Particularly is this true where, as in this *1091 case, there is evidence supporting the movant's factual assertion and nothing in the record disputing it. In addition to Connell, several decisions have recognized that a motion for summary judgment cannot be defeated simply by the mere assertion of an illusory and unsupported factual issue. E.g., Bared v. Miami Professional Sports Ltd., 353 So.2d 167 (Fla. 3d DCA 1978); Byrd v. Leach, 226 So.2d 866 (Fla. 4th DCA 1969); Johnson v. Studstill, 71 So.2d 251 (Fla. 1954). Accordingly, we conclude there was no genuine issue of material fact on whether the insurance funds were delivered to the mortgagee with instructions to apply them as advance payments.
Having determined that the record reveals no genuine issue of material fact concerning instructions given to the mortgagee, we must now determine whether summary judgment is proper assuming that no such instructions were given. In support of their position, appellees rely upon several Florida district court cases. We agree with the trial court that Atlantic & Gulf Properties, Inc. v. Palmer, 109 So.2d 768, is directly controlling on the viability of the prepayment defense under the circumstances of this case. Atlantic & Gulf Properties, Inc. is factually indistinguishable from the present case and directly supports a holding that the mortgagee was entitled as a matter of law to apply the proceeds in any manner it desired since there had been no instruction regarding application of the proceeds given by the mortgagor. We are also persuaded that the other cases relied upon by appellees support this rule of law. Guynn v. Brentmoore Farms, Inc., 253 So.2d 136; Gulf Life Insurance Co. v. Pringle, 216 So.2d 468; Charnock v. Dieleman, 421 So.2d 758.
At the time of the foreclosure proceeding in 1978, if the prepayment defense had been presented by Miller as contended by Red Carpet, the trial court would have been required to rule on the validity of the defense in light of the above-cited appellate decisions which existed at that time. Since the Atlantic & Gulf Properties, Inc. case was directly on point, and there were no conflicting cases in Florida at that time, the trial court would have been bound to follow the Atlantic & Gulf Properties, Inc. case and hold that the prepayment defense was not viable under the circumstances shown. Accordingly, even if appellees had presented the prepayment defense, it would have been insufficient as a matter of law and could not have prevented the foreclosure of Red Carpet's property. Therefore, appellees' failure to pursue this defense was not a proximate cause of loss to Red Carpet and the trial court properly granted the motion for summary judgment with respect to the legal malpractice claim in count 1 of Red Carpet's complaint.
AFFIRMED.
MILLS and ERVIN, JJ., concur.

ON MOTION FOR REHEARING
ZEHMER, Judge.
Appellant Jimmy Hatcher's motion for rehearing is denied in all respects. Only one matter needs clarification. Hatcher contends, inter alia, that we erred in affirming summary judgment on counts 2 and 3 of appellant Red Carpet's complaint alleging malicious prosecution and abuse of process. He contends the trial court erroneously based its summary judgment on the doctrine of collateral estoppel when there was not a proper identity of parties or issues between the present case and the prior case relied upon by the court. This precise question has been raised and decided adversely to appellant in Red Carpet Corp. v. Roberts, 443 So.2d 377 (Fla. 1st DCA 1984). This prior decision is the law of the case, and we are bound by it.
MILLS and ERVIN, JJ., concur.