**In re RED CARPET CORPORATION OF PANAMA CITY BEACH, Debtor.**

**Jimmy HATCHER, Petitioner–Appellant,**

v.

**John MILLER, Respondent–Appellee.**

**No. 89–3012.**

United States Court of Appeals, Eleventh Circuit.

June 4, 1990.

Jimmy Hatcher, Bristol, Fla., pro se.

William C. Owen, Carlton & Fields, Mary E. Haskin, Tallahassee, Fla., for John Miller.

Before FAY, Circuit Judge, RONEY [*], Senior Circuit Judge and PITTMAN [**], Senior District Judge.

FAY, Circuit Judge:

This case commenced on July 27, 1976, when appellee John Miller filed a petition for a Chapter XI reorganization on behalf of the Red Carpet Corporation of Panama City Beach (Red Carpet). After nearly fourteen years, the case remains open. We are hopeful that the issuance of this opinion finally will terminate the litigation. Appellant Jimmy Hatcher, appearing pro se, raises several issues concerning an award of attorneys' fees to John Miller for services rendered to Red Carpet. Essentially, Hatcher contends that the district court made incorrect factual findings, mis-

---

[*] *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

applied the law, erroneously failed to conduct more than one evidentiary hearing, and erred in awarding Miller interest on attorneys' fees from the date of the original order awarding attorneys' fees. After thorough review of the expansive and confusing record, we AFFIRM in part and REVERSE in part.

BACKGROUND

The relationship between Jimmy Hatcher, president of Red Carpet, and John Miller began in July 1976, when Miller was recommended to Hatcher to handle the bankruptcy of Red Carpet. Hatcher retained Miller, who proceeded to file a Chapter XI petition on July 27, 1976. On that same date, the bankruptcy court approved Red Carpet's petition and allowed Red Carpet to continue operations as debtor in possession.

A plan was filed on October 16, 1976. Listing real property holdings valued at $9,919,956.17 with mortgages of approximately $4,900,000.00, Red Carpet agreed to pay all unsecured creditors except Hatcher one hundred percent of the amount owed to them. Hatcher agreed to take nothing until all other unsecured creditors were paid. Secured creditors were assured that the plan did not affect their security interests and that they would be paid according to their security agreements. The court approved this plan on November 12, 1976.

Subsequently, Hatcher and Miller encountered serious problems in their efforts to dispose of the properties. Many of the properties on which the distribution plan was based had been overvalued, Red Carpet retaining little or no equity in excess of the mortgage encumbrances upon them. Consequently, on May 2, 1977, a group of creditors, both secured and unsecured, filed a petition for the appointment of a receiver alleging that the debtor in possession had made no substantial progress since the plan was approved and that Hatcher was experiencing a conflict of interests because of his individual liability for many of the obligations of Red Carpet. On April 17,

1978, after numerous delays of which most were caused by Hatcher, the court appointed Edwin Rude as receiver for Red Carpet.

On April 24, 1978, Miller filed an application for attorneys' fees and expenses in the amount of $36,228.19. The receiver responded that consideration of the application was not appropriate until the receiver produced a report concerning conversion of the proceedings to a Chapter X reorganization. Rather than convert the case to Chapter X, however, the receiver, after obtaining consent from secured creditors and agreements to restructure their mortgages, successfully sold the Artist of America Inn, the largest remaining asset of Red Carpet. Subsequently, on February 28, 1979, Miller amended his request for attorney's fees to $37,917.75.

On February 13, 1979, the court verbally reinstated Hatcher as debtor in possession, limiting the receiver to overseeing only special matters.[1] In his report to the court filed May 21, 1979, Hatcher explained that on April 28, 1979, he sent a letter to John Miller informing him that his services were no longer desired. A copy of this letter was sent to the receiver, some unsecured creditors, and the clerk of the bankruptcy court. In his report, Hatcher further stated that he had retained the law firm of Carlisle & Chason to represent the debtor in possession. Hatcher simultaneously filed a petition for court approval of Carlisle & Chason as attorneys for the debtor in possession. This petition was granted on June 19, 1979.

On May 29, 1979, after having been informed of his termination but before the court appointed Hatcher's new attorneys, Miller filed an application to adjudicate the debtor a bankrupt. After considering the objections of two approved creditors and the testimony of Hatcher, the receiver, and Miller, the court denied Miller's application for adjudication.

Hatcher and his attorney then set out to prevent Miller from recovering the attorneys' fees that he had requested. The

1. The court did not order the restoration of the debtor to debtor in possession on paper until October 9, 1979. Hatcher claims that the delay

was caused by Miller's failure to submit a proposed order after the hearing on February 13, 1979.

hearing on allowance of attorneys' fees was conducted on March 21, 1980. At that hearing, Hatcher not only attempted to prove that the amount of fees was incorrect, but also that Miller was entitled to nothing because of his negligent representation of Red Carpet. Although Hatcher's attorney did not "intend to try to prove a malpractice case and damages," he introduced evidence regarding the "skill and diligence" of Miller over the objection of Miller's counsel. R12–23a–49. Hatcher's counsel elicited testimony regarding a possible fee-splitting arrangement between Miller and Hatcher's first attorney, Gary Tennyson. Hatcher contended that Miller agreed to split the retainer of $5,000.00 with Tennyson simply because Tennyson referred Hatcher to Miller. Hatcher's counsel similarly adduced testimony indicating that Miller negotiated a ten percent commission for real estate that he sold on behalf of Red Carpet. Hatcher sought to prove that because Miller desired commission from the sale of the properties, Miller advised Hatcher to refrain from selling individual parcels of Red Carpet's property, for which Hatcher's real estate broker, Mr. Commander, had already found buyers, and to sell all the properties as a package to large investors whom Miller and his partner would locate. Additionally, Hatcher's counsel introduced evidence that Miller was negligent in failing to pursue an affirmative defense in a foreclosure action regarding the Fun-n-Sand Motel, which was owned by Red Carpet.[2] Over objection, the court also allowed Hatcher's testimony concerning Miller's alleged negligence in handling a lease agreement between Red Carpet and Mr. Abdo and Mr. McCormick of Resorts of America, Inc. Hatcher stated that both parties had entered into the agreement and had instructed Miller to deliver the lease to the court for its approval,

but Miller failed to deliver the document as directed.

On April 27, 1981, Hatcher's attorney filed a motion to surcharge Miller and his law firm for losses caused by Miller's alleged negligence during his representation of Red Carpet. The motion includes several of the same allegations that Hatcher asserted during the hearing concerning Miller's request for attorneys' fees. For example, the motion contains allegations of fee-splitting, conflicts of interest, Miller's failure to zealously defend Hatcher in the Fun-n-Sand Motel foreclosure, and his refusal to deliver the lease agreement between Red Carpet and Resorts of America, Inc. The court denied the motion, reasoning that the bankruptcy court in the context of a Chapter XI proceeding is without jurisdiction to surcharge the attorney of the debtor in possession. The court further noted that most of the allegations raised in the motion similarly were raised defensively in response to Miller's fee application. Hatcher appealed the bankruptcy court's decision; the district court affirmed. Hatcher then appealed to this court, and this court affirmed, stating that while an attorney for the debtor in possession may be denied his fees because of poor quality work, "a bankruptcy court cannot order money damages against an attorney for a debtor in possession." *In re Red Carpet Corp. v. Miller*, 708 F.2d 1576, 1578 (11th Cir.1983) (per curiam).

On December 14, 1981, the bankruptcy court, after considering evidence presented at the hearing on attorneys' fees, awarded Miller $41,700.00 as being the total reasonable compensation allowable. After subtracting credits in the amount of $12,-482.00, the balance due was $29,218.00. The court explained that it had considered the quality of service and all other factors as directed in *In re First Colonial Corp.*,

---

**2.** The Fun-n-Sand Motel was destroyed by Hurricane Eloise on September 19, 1979. Hatcher received insurance proceeds in the approximate amount of $141,000.00 for the destruction, and tendered the proceeds to the mortgagees with no instructions regarding how the proceeds were to be applied. The mortgagees applied the $141,000.00 to the end of the mortgage. Hatcher contends that the money was submitted as

advance payments on the mortgages. When the mortgagees filed a foreclosure action, Hatcher consulted Miller. Miller testified that after an affirmative defense was filed in the foreclosure suit, Hatcher instructed Miller not to pursue the defense. Hatcher testified that Miller discouraged him from pursuing the defense and upon this advice Hatcher allowed the mortgagees to foreclose without incident.

544 F.2d 1291 (5th Cir.1977), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). On appeal, however, the district court determined that the bankruptcy judge's conclusory statements were inadequate to fulfill *First Colonial*'s mandate "that the bankruptcy judge make findings and explain those findings separately for each of the twelve factors enunciated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)." R5–33–4. Accordingly, the case was remanded for expanded findings.

Before the bankruptcy court made its expanded findings, Hatcher submitted various motions urging the court to alter its findings of fact to reflect facts to which Hatcher had testified at the hearing on attorneys' fees, and Hatcher requested admissions from Miller. The court denied the motions and requests and entered its order of expanded findings on December 21, 1984. Although the court recognized that the remand order authorized reopening of the proceedings and holding of additional hearings, it concluded that more hearings were unnecessary. Rather the court attempted to make more specific and expanded findings based on the evidence presented at the initial fee determination hearing. In making its finding regarding the quality of legal work rendered by Miller, the bankruptcy judge stated that "no weight was, or should have been, given to the cursory evidence" of negligence and alleged malpractice. R7–40–25. The court explained that such matters should be accorded plenary treatment, including a jury, in an appropriate forum, not the bankruptcy court. On April 3, 1985, the court awarded interest on the fees to run from the date of the original order awarding fees (December 14, 1981) and ordered Red Carpet to deposit the amount of fees awarded in one account and the amount of interest in another account.

Hatcher appealed the bankruptcy court's order allowing attorneys' fees and the order awarding interest. As to the attorneys' fees, the district court remanded the case, instructing the bankruptcy court to determine whether Hatcher was afforded a sufficient opportunity to present evidence relevant to Miller's negligence and whether there was sufficient evidence in the record to make the necessary findings of fact on the issue. The bankruptcy court was further directed to enter specific findings of fact on the quality of Miller's work and then to determine the effect of these findings on the fees requested. As to the order awarding interest, Hatcher argued that the bankruptcy court erred because a judgment was never entered, and under 28 U.S.C. section 1961, interest runs from the date of judgment. The district court rejected Hatcher's argument and ruled that interest was properly awarded because the order allowing fees is a judgment for purposes of awarding interest even though it might not be a judgment for purposes of calculating the time for appeal.

On remand, a strange turn of events occurred, resulting in Judge Vinson having to comply with his own order. Judge Sauls, who had been assigned to the case as its bankruptcy judge, resigned, and his replacement, Judge Killian, recused himself because of a prior professional association with one of the attorneys. Accordingly, Judge Vinson assumed the task of determining whether Hatcher had been given ample opportunity to present his evidence of negligence and making specific findings of fact on the negligence issue.

After a lengthy hearing conducted on October 16, 1987, Judge Vinson found that Hatcher had been afforded a full opportunity to present evidence concerning the quality of Miller's legal representation. In support of his finding, Judge Vinson noted that at the original evidentiary hearing on Miller's application for fees, Hatcher and Red Carpet attempted to prove the poor quality of Miller's representation, and the bankruptcy court repeatedly allowed them to follow this course over continuous objections from Miller. The judge further concluded that Hatcher "has simply been unable to show that he has compelling evidence that he was prevented from presenting at the hearing of March 20, 1980." R9–62–5. His conclusion comports with Judge Sauls' earlier order wherein Hatcher was denied a rehearing on the attorneys'

fees issue because, after being afforded the extended opportunity, he had failed to demonstrate that relevant evidence had been newly discovered or through due diligence could not have been presented at the original hearing. Judge Vinson, like Judge Sauls, refused to consider evidence of allegedly unethical conduct occurring after February 28, 1979, the last day for which Miller requested fees. Hatcher, therefore, was not granted an additional evidentiary hearing.[3]

Judge Vinson next ventured into the merits of Hatcher's allegations of negligence, finding such an inquiry necessary under *In re First Colonial Corp.*, 544 F.2d at 1300. First, the court considered the Fun-n-Sand Motel foreclosure.[4] The district court considered the testimony of both Miller and Hatcher. Miller testified that he had advised Hatcher that the law regarding the prepayment defense was unclear, and after considering all the circumstances, Hatcher decided not to pursue the claim. Hatcher testified that he did not defend the foreclosure suit because Miller had advised him that the defense would fail and pursuit of the defense would not be cost effective. Hatcher further stated that the bankruptcy court recommended litigating the foreclosure defense in state court. After considering Florida law, which requires the mortgagor to specify how to apply funds tendered to the mortgagee in order for the prepayment defense to succeed, *see Hatcher v. Roberts*, 478 So.2d 1083, 1087 (Fla. Dist.Ct.App.1985), *review denied*, 488 So.2d 68 (Fla.1986), Judge Vinson concluded that

Miller's inaction in the Fun-n-Sand foreclosure suit provides no basis on which to reduce the award of attorney's fees.

The court next addressed Miller's role in the Resorts of America, Inc., lease arrangement. Hatcher attempted to prove that Miller was negligent because he failed to request court approval of a lease agreement between Red Carpet and Abdo and McCormick of Resorts of America, Inc. Hatcher testified that he instructed Miller to deliver the lease agreement to the court, but because Miller believed that the lease was approvable only if the proceeding was converted to Chapter X, and because he believed Abdo and McCormick to be "wheeler dealers," he never submitted the agreement. R12–23a–185. Hatcher realized that the lease was conditioned on approval by the court and acknowledged that Abdo and McCormick had stopped payment on their deposit check. The bankruptcy court had found that unless the proceeding was converted into a Chapter X bankruptcy, the lease agreement could have been approved only if the mortgagees consented, and because "their collective mood at that point might charitably be characterized as having been bordering somewhere near livid rage," obtaining consent was highly unlikely. R7–40–26. Judge Vinson adopted the bankruptcy court's findings and concluded that Hatcher failed to adequately prove negligence or misconduct on the part of Miller.

The court then looked to Hatcher's allegations concerning a conflict of interest

---

**3.** We note that although declining to order another full evidentiary hearing, Judge Vinson allowed Hatcher "the opportunity to point out ... what ... needs to be added to the evidence in order to make the record complete on either the Commander proposal or the Abdu McCormack lease." R12–75–31.

**4.** Before determining whether Miller was negligent in his handling of the foreclosure case, however, the court addressed a collateral estoppel issue that arose as a result of Red Carpet's state court malpractice proceeding against Miller. In that case, Hatcher asserted essentially the same allegations as he raised in opposition to Miller's request for fees. One such allegation described Miller's failure to zealously pursue a prepayment defense in the Fun-n-Sand foreclosure action. The Circuit Court for Leon

County entered a summary judgment against Red Carpet because Red Carpet was unable to present any evidence that would have formed the basis for a defense in the foreclosure suit. *See Hatcher v. Roberts*, 478 So.2d 1083, 1086 (Fla.Dist.Ct.App.1985), *review denied*, 488 So.2d 68 (Fla.1986). The First District Court of Appeal affirmed. *Id.*

Judge Vinson concluded that because Hatcher had no litigable interest in the state malpractice suit, the state court action did not effect Hatcher's protest to the fee award. In arriving at this conclusion, the court emphasized that Hatcher is opposing the fee award on behalf of himself, an unsecured creditor, rather than in his capacity as chief executive officer and majority stockholder of Red Carpet.

Miller experienced while attempting to locate buyers for properties owned by Red Carpet. Hatcher testified that he entered into an agreement with Miller and his law firm under which the firm was to be paid a ten percent commission if the property was sold to a buyer located by the firm. Hatcher had hired other brokers to sell the properties, one of whom, Mr. Commander, had obtained buyers for separate parcels. Miller advised Hatcher not to sell the properties separately because they would be more valuable if sold as a package and because Miller's firm had located a potential buyer. Hatcher alleges that Miller's recommendation resulted from his firm's interest in the commission for sale of the property. The district court disagreed, finding that Miller had no "interest" in the sale other than his interest in attorneys' fees, which had to be approved by the bankruptcy court. The court further found that Miller would have received a fee only for his role as attorney, not as real estate broker. Additionally, Judge Vinson noted that Hatcher was fully aware of any potential conflicts and, given his expertise in real estate, could have rejected Miller's advice as unsound. Accordingly, Judge Vinson did not reduce or modify the award of attorney's fees.

Subsequently, Hatcher moved the court to alter or amend its order, to make different findings of fact, and to order an additional evidentiary hearing. These motions were denied. Miller sought sanctions and attorneys' fees that he incurred as a result of Hatcher's motions on the ground that Hatcher's motions simply repeated claims that the court already had rejected. Hatcher responded and subsequently moved the court to impose sanctions on Miller for requesting sanctions against Hatcher; Judge Vinson declined. Finally, amid the bickering between Hatcher and Miller, on July 25, 1988 a judgment was entered *nunc pro tunc* February 16, 1988 in favor of Miller in the amount of $29,218.00 for his representation of Red Carpet. As was expected, Hatcher moved to alter or amend the judgment; Judge Vinson again declined. Hatcher appealed Judge Vinson's order awarding attorneys' fees to the district court, but the district court found that

it was without jurisdiction to hear an appeal from another district judge's order. Consequently, the appeal was transferred to this court.

## DISCUSSION

Hatcher raises numerous issues on appeal. First, he challenges the jurisdiction of this court to hear his appeal, contending that the judgment awarding attorneys' fees to Miller is not a final decision within the meaning of 28 U.S.C. § 1291, because other motions are pending. Accordingly, he requests a remand of this case to the district court until all matters are finally resolved. The remaining substantive issues were addressed to the district court before it transferred the case to this court. We, therefore, take the remaining issues from the brief Hatcher submitted to the district court. In that brief, Hatcher first contends that Judge Vinson committed reversible error in following his own order on remand. Second, Hatcher believes that Judge Vinson should not have limited his inquiry into Miller's allegedly negligent or unethical conduct to events occurring prior to February 28, 1979. Third, Hatcher contends that the district court erred in refusing to conduct an additional evidentiary hearing. Fourth, Hatcher challenges the bankruptcy court's refusal to find facts as proposed by Hatcher and to compel Miller to admit to various negligent and unethical acts. Fifth, Hatcher complains that the court failed to consider whether Miller's services were necessary and of value to Red Carpet. Sixth, Hatcher asserts that the amount of the award is incorrect insofar as Miller lumped his fees and padded his hours. Seventh, Hatcher challenges the district court's findings of fact, claiming that it should have found Miller's conduct to be negligent and unethical. Last, Hatcher contends that the bankruptcy judge erroneously awarded Miller interest on the fees from the date of the original order allowing fees.

### Appealability

The first issue we address concerns our jurisdiction to hear this appeal. Hatcher originally filed his notice of appeal with the district court. Because Judge Vinson, who

entered the order awarding fees, is a district judge, the case was transferred to this court. Hatcher challenges the transfer, arguing that the district court has not rendered a final decision within the meaning of 28 U.S.C. § 1291.[5] Specifically, Hatcher claims that the litigation has not ceased because the district judge has not ruled on Hatcher's petition for removal of Pedro Mandoki as manager and his request for legal action by the receiver filed on June 19, 1978; Miller's application for accounting filed on March 14, 1979; Hatcher's application for an order to review administrative fees and motion for recusal filed on March 27, 1985; and Hatcher's motion for sanctions against Miller and his attorney and for an evidentiary hearing filed on April 11, 1988.

■ "The requirement of finality is essential to avoid piecemeal review, inconvenience and unnecessary costs." *In re Miscott Corp.*, 848 F.2d 1190, 1193 (11th Cir. 1988). Generally, a final decision "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *In re King Memorial Hospital, Inc.*, 767 F.2d 1508, 1510 (11th Cir.1985) (per curiam). To be final, however, a decision does not have to be the last order that can possibly be made. *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1493 (11th Cir.), *vacated on other grounds*, 804 F.2d 1573 (11th Cir.1986).

■ In this case, Hatcher claims that the pendency of certain motions precludes our review of the district judge's order awarding attorneys' fees. Upon review of the record, however, we find this argument to be without merit. First, Judge Vinson has made an explicit ruling denying Hatcher's motion for sanctions against Miller. Second, the proceedings are far beyond the point of ruling on motions made between 1978 and 1985. The court has already ordered other administrators to be paid and has ordered a distribution to priority and unsecured creditors. It appears that the only issue left to be resolved at this long awaited final stage of the proceedings is the entitlement of Miller to the fees awarded him. Accordingly, we will review the district court's final order and judgment awarding attorneys' fees to Miller.

*The Merits*

■ We note initially that an award of attorneys' fees in a bankruptcy proceeding will be reversed only if the court abused its discretion. *In re Beverly Mfg. Corp.*, 841 F.2d 365, 369 (11th Cir.1988). An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous. *Id.* Accordingly, we review the judges' actions for abuse of discretion.

■ Hatcher's first contention regarding Judge Vinson's order is that Judge Vinson should have been barred from following the mandate of his own order on remand. We disagree. The bankruptcy court functions as an adjunct of the district court. *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453, 1455 (11th Cir.1985) (per curiam). More-

---

5. We recognize that an appeal from a district court in a bankruptcy case would normally be governed by 28 U.S.C. § 158(d), which states in pertinent part:

The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

Subsection (a) confers jurisdiction on the district courts to hear appeals from final and, with leave of the court, interlocutory judgments, orders, and decrees of bankruptcy judges in cases referred to the bankruptcy judges. Subsection (b) is not relevant to this discussion.

This case differs from the norm, however, because although Judge Vinson was sitting in a bankruptcy capacity, he is a district judge. His decision was not reviewed by the district court; it was issued by the district court. *See In re Manoa Finance Co.*, 781 F.2d 1370, 1372 (9th Cir.1986), (per curiam) *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). In any event, whether the appeal proceeds under section 158 or section 1291 is inconsequential. The same principles regarding finality apply to both. *T & B Scottdale Contractors, Inc. v. United States*, 815 F.2d 1425, 1427 n. 7 (11th Cir. 1987); *In re Wisz*, 778 F.2d 762, 764 (11th Cir. 1985) (per curiam).

over, the district court may *sua sponte* withdraw any case that it previously has referred to the bankruptcy court. 28 U.S.C. § 157(d).[6] In this case, Judge Vinson, sitting in review of the bankruptcy court, remanded the case to the bankruptcy court to enter expanded findings of fact regarding the alleged negligence or misconduct of Miller. Unable to find an available bankruptcy judge, however, Judge Vinson carried out his own mandate. This is not a situation in which a judge sits in critical review of his own order. In such a case, impropriety is apparent. In this case, the district judge, rather than demanding the assistance of the adjunct court, expanded the findings himself. Considering that Judge Vinson was assuming his classic role of finding facts and drawing conclusions from those facts, and that the district court may withdraw reference of the case to the bankruptcy court *sua sponte*, we find no conflict or injustice in allowing Judge Vinson to follow his own order on remand.

■ As to the merits of the order, Hatcher contends that Judge Vinson erroneously failed to consider misconduct alleged to have occurred after the time period for which Miller claimed fees. Specifically, Hatcher is concerned that the court did not consider the fact that Miller, after being fired by Hatcher and filing an application for fees, moved to adjudicate Red Carpet a bankrupt. Hatcher contends that Miller was still counsel of record for Red Carpet when he filed the motion to adjudicate, and therefore breached his duty to his client. We find no merit in Hatcher's contention. Displeased with Miller's services, on April 28, 1979, Hatcher sent Miller a letter terminating Miller and his firm as counsel for Red Carpet. A copy of that letter was sent to the clerk of the bankruptcy court. Additionally, in a report from the debtor in possession to the court filed on May 21, 1979, Hatcher informed

the court that the termination letter had been sent to Miller, and that same day, hatcher petitioned the court for retention of new counsel, Carlisle & Chason. In an effort to assure receipt of fees for services rendered, Miller filed an application to adjudicate Red Carpet a bankrupt on May 29, 1979. Clearly, the court was aware that Miller no longer represented Red Carpet when he filed the application for adjudication. In fact, in a subsequent order, the bankruptcy judge found that "Mr. Miller was terminated in the full glare of the record and with the knowledge of everyone even remotely concerned." R7–44–8. It appears that Miller, as a priority creditor rather than counsel for Red Carpet, was simply attempting to protect his interest in fees owed him by Red Carpet, an interest which certainly appeared to be in jeopardy after Hatcher had stated that he was displeased with Miller's services. Accordingly, we reject Hatcher's contention that the trial judge erred because he failed to consider alleged misconduct committed by Miller after he was terminated.[7]

■ Hatcher next argues that because Miller allegedly lumped his fees in his application to the court, the application should have been denied. Hatcher claims that Miller failed to specifically delineate services rendered from the commencement of the proceedings through June 25, 1977. For resolution of this issue, we look to the seminal case of *In re First Colonial Corp.*, 544 F.2d 1291 (5th Cir.1977), and its progeny. "[D]istrict courts and bankruptcy judges have broad discretion in determining the amount of attorneys' fees to award as compensation for services performed in connection with bankruptcy proceedings...." *Id.* at 1298. Deference is especially given to an award of attorneys' fees granted by a bankruptcy judge who has not only presided over the evidentiary hear-

---

6. The district court eventually did withdraw this case from the bankruptcy court, but did not do so until after Judge Vinson entered the order awarding Miller attorneys' fees.

7. We note that Hatcher had available other means by which to recover for alleged misconduct occurring after the period for which Miller

requested fees. Apparently, Hatcher has taken advantage of the opportunities, but has failed to convince any other court of the merit of his claims. *See Hatcher v. Roberts,* 478 So.2d 1083; *Red Carpet Corp. v. Roberts,* 443 So.2d 377 (Fla. Dist.Ct.App.1983), *review denied,* 488 So.2d 68 (Fla.1986).

ing regarding fees, but also has had the opportunity to observe the performance of the attorney during the course of the bankruptcy proceedings. *In re U.S. Golf Corp.*, 639 F.2d 1197, 1207–08 (5th Cir. Mar. 1981).

*First Colonial* delineates a three-step process for determination of a reasonable fee. First, the bankruptcy court must ascertain the nature and extent of the attorney's services. "To this end, each attorney seeking compensation should be required to file a statement which recites the number of hours worked and contains a description of how each of those hours was spent." *In re First Colonial*, 544 F.2d at 1299. If any facts regarding these services are disputed, the court must hold an evidentiary hearing. *Id.* at 1300. Second, the judge must assess the value of the services rendered. *Id.* Finally, the bankruptcy judge must briefly explain the findings on which the award is based, including a description of how each of the twelve *Johnson* factors affected the decision. *Id.*

█ Hatcher's complaint regarding the lumping of services is addressed to the bankruptcy court's determination of the nature and extent of Miller's services. In its original order awarding fees, the bankruptcy court explained that it was relying not only on the billing statements accompanying Miller's application, but also evidence adduced at the hearing. The court noted that had it relied solely on the documentation provided by Miller, the fees would have totalled $47,969.47. However, the court found the total fee to be $41,700.00, "[i]n recognition of all of the *First Colonial* factors, the deficiencies in the supporting documentation and the prior ... payments made and received." R5–31–7. In a later order on remand to clarify its earlier order, the court explained that after considering the evidence presented by both parties at the hearing on attorneys' fees, a reduction of five percent from the time claimed on the June 25, 1977 statement had

been made, resulting in a deduction of thirty hours from the hours claimed. From the record, it is evident that the court scrutinized the nature and extent of the services Miller rendered to Red Carpet. This is not a case in which the court failed to conduct a hearing, or failed to consider the inadequacies in the attorney's application. *see In re First Colonial*, 544 F.2d at 1300. Rather, the court conducted a lengthy hearing, allowing both parties to introduce considerable evidence, and based upon the entire record before it, awarded what it considered to be reasonable compensation. We hold that the court did not abuse its discretion in arriving at the award. Additionally, based on the record before us, we find no indication that the amount of the award, as a finding of fact, is clearly erroneous.

Hatcher does not stop at the first step, however. He assigns error to Judge Vinson's findings regarding the value of Miller's services as well.[8] Hatcher proposed findings of fact, petitioning the court to adopt such findings. Essentially, these proposed findings contradict the court's findings concerning alleged negligent and reprehensible acts performed by Miller while representing Red Carpet. We will review the court's findings for abuse of discretion.

█ After conducting a hearing, Judge Vinson considered three instances of alleged negligence on the part of Miller. First was Miller's failure to zealously defend Red Carpet in the Fun-n-Sand Motel foreclosure action. Judge Vinson found that under Florida law, "in order for the prepayment defense to succeed, the mortgagor must have instructed the mortgagee to apply the payments to the front end at the time of payment." R9–62–19. Accordingly, the district judge concluded that Miller's failure to pursue the prepayment defense in the Fun-n-Sand Motel case pro-

---

**8.** We note that the orders in which the amount of fees was determined were issued by a bankruptcy judge. However, those orders were reviewed by the district court and found to be deficient only insofar as they did not adequately address alleged instances of attorney negligence or misconduct. Consequently, Judge Vinson's order deals only with the limited issue of the value of Miller's services to Red Carpet, and does not address the nature and extent of such services.

vides no basis for reducing the fees awarded him. We hold that Judge Vinson did not abuse his discretion. We find no error in his interpretation of Florida law and no clear error in his findings of fact. *See Hatcher v. Roberts*, 478 So.2d at 1087. The record amply demonstrates that Hatcher never instructed the mortgagee to apply the payment to the front end of the mortgage.

■ The second instance of alleged negligence involves Miller's failure to seek approval of a lease agreement between Hatcher and Abdo and McCormick of Resorts of America, Inc. Adopting a portion of the bankruptcy court's order, Judge Vinson ruled that good reason existed for Miller to withhold the lease. It was very unlikely that any of the creditors would have approved of the agreement, and without their approval, only conversion of the case to Chapter X could have accomplished anything. Taking into account our remoteness from the proceedings in the bankruptcy court, we are in no position to question the court's finding as to the collective mood of the creditors, which is characterized as "'having been bordering somewhere near livid rage.'" R9–62–21. Consequently, we hold that the court did not abuse its discretion in denying a reduction of fees based on Miller's failure to submit the lease agreement for the court's approval.

Finally, the district court analyzed Hatcher's allegation concerning a conflict of interest Miller might have been experiencing when he advised Hatcher not to sell certain parcels of property for which Hatcher's real estate broker, Commander, had found buyers. Hatcher testified that he and Miller had entered into an agreement whereby Miller was to receive ten percent for any property sold by Miller or his firm. Miller denied entering into such an agreement and recognized that any request for fees would have to be approved by the bankruptcy court. The district court found that Miller's only interest in Red Carpet's real estate transactions was an expectation of payment of fees for legal services rendered, the amount to depend on the nature and extent of the services and

approval of the bankruptcy court. Obviously, the court's decision involved credibility choices, and we find no clear error in the court's election.

The next issue we address is whether the court erred in refusing to grant Hatcher's repeated requests for an additional evidentiary hearing. It is apparent from the record that the original evidentiary hearing was conducted to comply with the mandate of *First Colonial.* The judge heard testimony from both parties and their witnesses. Much of what Hatcher presented was intended to prove that Miller provided negligent legal services and misguiding advice. Counsel for Miller objected to questioning regarding Miller's allegedly negligent conduct, asserting that such evidence is irrelevant. The court, however, allowed the questioning to continue over the repeated objections of Miller's counsel. Furthermore, in a subsequent hearing, Judge Vinson gave Hatcher "the opportunity to point out ... what ... needs to be added to the evidence in order to make the record complete on either the Commander proposal or the Abdu McCormack lease." R12–75–31. Hatcher has had every opportunity to present evidence in support of a reduction in the award of fees to Miller. The law can provide only the opportunity to present evidence; the evidence itself must come from the litigating parties. Hatcher simply has failed to convince any of the courts to which he has presented his case that Miller has committed negligent or blameworthy acts. We see no need for a new evidentiary hearing.

■ Finally, Hatcher contends that the district court erred in awarding interest on Miller's fees from the date of the original order awarding attorneys' fees. We agree. Title 28 U.S.C. section 1961 provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Rule 58 of the Federal Rules of Civil Procedure requires that the clerk prepare and enter a judgment, set forth on a separate document, upon a decision by the court that a party shall recover a sum certain. In this case, judgment in favor of Miller was not entered on the

record until July 25, 1988, *nunc pro tunc* February 16, 1988. The issue of compensation due Miller was not conclusively decided until the district court filed its final order on February 16, 1988, awarding Miller $29,218.00 for his representation of Red Carpet. Before that order, numerous questions regarding the value of Miller's services to Red Carpet remained, rendering both the validity and the amount of the award uncertain. Moreover, the court, on more than one occasion, ordered that the fees be withheld until further order of the court. *See* R5, Order filed January 25, 1982 (Upon Miller's application to enforce order awarding fees, court ordered debtor in possession to make no disbursements without prior leave of court.); R8-52-3, Order Awarding Interest Earned on Attorney's Fees and Establishing an Escrow Account (Attorneys' fees held in escrow were to be disbursed only upon further order of the court.). Consequently, the court erred in awarding interest from the date of the original order awarding fees (December 14, 1981) rather than the date of entry of the judgment (February 16, 1988). *See, e.g., Barrios v. Louisiana Constr. Materials Co.*, 465 F.2d 1157, 1168 (5th Cir.1972) ("Title 28 U.S.C., § 1961, explicitly provides that 'interest shall be calculated from the date of the entry of the judgment', not from the date of the verdict.").

Based on the foregoing reasons, we AFFIRM the district court's judgment awarding to Miller fees in the amount of $29,218.00, and REVERSE the district court's order awarding interest from the date of the original order.