United States Court of Appeals,

Eleventh Circuit.

No. 96-2605.

In re HILLSBOROUGH HOLDINGS CORP., et al., Debtors.

STROOCK & STROOCK & LAVAN;  Kaye, Scholer, Fierman, Hayes & Handler, Plaintiffs-Appellants,

v.

HILLSBOROUGH HOLDINGS CORP., et al., Defendants-Appellees.

Nov. 18, 1997.

Appeals from the United States District Court for the Middle District of Florida. (Nos. 95-2034-Civ-T-25C;  95-2035-Civ-T-25C;  89-9715-8P1 through 89-9746-8P1 and 90-1197-8P1), Henry L. Adams, Jr., Judge.

Before CARNES, Circuit Judge, and CLARK and CAMPBELL[*], Senior Circuit Judges.

CAMPBELL, Senior Circuit Judge:

This case concerns a bankruptcy court's refusal under 11 U.S.C. § 330(a)(2) to reimburse two law firms for certain categories of expenses the firms incurred in their work on a bankruptcy case because the court believed that the expenses of these generic types were part of a firm's "overhead" and were already built into its hourly billing rates.

*I. Background*

Hillsborough Holdings Corporation and thirty-one of its affiliates filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code on December 27, 1989.  Kaye, Scholer, Fierman, Hays & Handler, L.L.P. ("Kaye, Scholer") was retained as co-counsel to the Debtors, and Stroock & Stroock & Lavan ("Stroock") was retained as counsel to the Official Bondholders Committee. Both law firms were thus authorized to receive reasonable compensation for the actual, necessary

---

[*]Honorable Levin H. Campbell, U.S. Senior Circuit Judge for the First Circuit, sitting by designation.

services they rendered and to reimbursement for actual, necessary expenses they incurred in providing those services under 11 U.S.C. § 330(a).[1]

The Bankruptcy Court entered its first order on interim fee applications ("the first order") on October 5, 1990. In that order, the court declared that several categories of expenses were attributable to "overhead" and therefore non-compensable because they were already "built into the Applicant's hourly billing rate." The court described these categories as: postage; secretarial charges, including overtime charges; word processing; clerical tasks; local travel expenses; meals; express mail; messenger delivery expenses; copy charges; laundry; office supplies; typesetting; and computer research charges.

Over the next several years, the court periodically issued further orders on interim fee applications. In these orders, the court denied without discussion many of the firms' requests for reimbursement of their expenses, referring back to the principles set forth in the first order. In each order, the court reserved jurisdiction to reconsider the fee applications at the close of the case.

When the case concluded, the law firms in their final fee applications asked the court to reconsider all of the requests for expense reimbursements it had previously denied. They argued that their employment of a "user fee" billing system, which charges certain expenses directly to the particular client for whom they were identifiably incurred, and which excludes those separate

---

[1](a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

> (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

> (2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

2

expenses when setting the hourly billing rate, precluded the court from holding that such individually charged expenses constituted non-compensable "overhead."

On October 31, 1995, the court denied this request. While recognizing that the law firms' efforts were often "herculean," the court stated:

> [T]his Court is of the opinion, and repeatedly stated this opinion on numerous occasions that the awards made during the pendency of this case were a determination of the reasonable fees to be allowed for the tasks and services provided to the Debtors and the Debtors' estates. For this reason, this Court is satisfied that the reconsideration of the fees and expenses previously disallowed by the Court is inappropriate.

On the same day, the bankruptcy court also issued an order denying reimbursement for a portion of Stroock's expenses from Stroock's final fee application.

Over the course of the case, Stroock requested reimbursement for $787,791.43 in expenses of which $341,953.01 (43%) was disallowed, and Kaye, Scholer requested reimbursement for $679,711.91 in expenses of which $514,636.97 (76%) was disallowed.

The firms appealed these decisions to the district court, arguing principally that the disallowed expenses were not part of their "overhead" and were of a type ordinarily billed separately to their non-bankruptcy clients. The district court affirmed the bankruptcy court's rulings. The firms then brought this appeal.

## II. Discussion

"We note initially that an award of attorneys' fees in a bankruptcy proceeding will be reversed only if the court abused its discretion." *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883, 890 (11th Cir.1990). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.*

The Bankruptcy Code provides that the bankruptcy court may award to the debtor's attorney and professionals employed by an appointed committee under 11 U.S.C. § 1103 not only reasonable compensation for actual, necessary services rendered, but, "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a). See note 1, *supra.*

Early in the present case, the bankruptcy judge entered an order advising counsel that he would not reimburse certain listed broad categories of expenses, *supra,* p.3. The judge stated that such categories were attributable to "overhead" and therefore already "built into the applicant's hourly billing rate." The judge's declaration was made before most of the expense items in dispute were incurred and was plainly not based on findings as to the individual characteristics of expense items billed in this case. Rather it seems to have reflected the court's more general view that attorneys' claimed expenses falling within any of the listed categories must be deemed non-reimbursable because they are, in effect, not true "expenses," i.e. they are by definition "overhead" and so built (apparently by their very nature) into the applicant's hourly billing rate. There is no evidence or finding of record that the present attorneys had actually taken these classes of expenses into account when determining the hourly billing rates they charged. To the contrary, the attorneys profess to bill on a "user fee" basis, under which the hourly rate is set on the assumption that items of the classes prohibited by the court will, in many instances, be separately billed as expenses. Hence the court's prior order, made independently of the specifics of the appellants' billing methods, appears to reflect a legal conclusion that expenses of certain types must inevitably be presumed to be "overhead" rather than reimbursable "expenses" under 11 U.S.C. § 330(a)(2).

We emphasize the last point because our review standard varies depending upon whether we are examining a legal ruling or a fact-based issue entrusted to the bankruptcy judge's broad discretion. Most fees issues are undoubtedly of the latter type. To the extent a bankruptcy judge were to find that claimed expenses were not actually incurred, did not sufficiently relate to the case, were unnecessary, or were excessive, we would overturn his determination only if convinced the findings were "clearly erroneous"—a very high standard, and one we would rarely be likely to find, especially in a fees situation.

Our review standard is different, however, when dealing with *legal* rulings. The controlling fees statute allows a court to award not only reimbursable compensation for attorney's services

but—in a separate clause—allows "reimbursement for actual, necessary expenses." Here the bankruptcy judge declined in advance to reimburse many described categories of expenses, apparently because of his belief that the categories he listed could never, because of their very nature, be true "expenses" (or "actual, necessary expenses") within 11 U.S.C. § 330(a)(2). A ruling like this, not tied to an evaluation of the particular facts of the case but based on a general interpretation of the meaning of the word "expenses" as uniformly applied in all cases, is a legal ruling.[2]

In saying this, we do not mean to suggest that appellate courts should be eager to fly-speck the niceties of fee awards. If, for example, the bankruptcy judge, upon analysis of the methodology used by these attorneys to bill computer research expenses, had determined that their calculus did not fairly mirror the actual costs of such research in the instant case, we would review that determination with marked deference to the bankruptcy court. Similarly, if the judge, on some reasonable basis, found that certain expenses claimed were items not ordinarily viewed by the bar as billable expenses, we would examine the ruling with considerable, if not unlimited, deference.

Here, however the bankruptcy judge prohibited reimbursement of whole categories of expenses, ruling that none of them were allowable, being presumptively "overhead" and built into the hourly billing rate. An assertion at this level of generality poses a legal issue. If we were to refuse to review such a ruling, we would leave attorneys in a situation where many items ruled nonreimbursable as expenses in one court might be deemed perfectly reimbursable in another. We do not think that the meaning of the statutory provision for reimbursement of "actual, necessary expenses" can fluctuate between such extremes.

Reviewing the merits of the ruling, we do not agree with the bankruptcy judge that reimbursable expenses within § 330(a)(2) are limited in the manner suggested in his first order. We accept that true "overhead" costs—the ordinary operating costs of a firm, such as rent, heat, and the

---

[2]As such it amounts to an abuse of discretion if it applies a wrong standard. *In re Red Carpet,* 902 F.2d at 890. We review legal rulings *de novo.*

like, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.  *See In re Mulberry Phosphates, Inc. ("Mulberry II"),* 169 B.R. 750, 751 (M.D.Fla.1994); *In re Glasstream Boats, Inc.,* 146 B.R. 784, 785 (Bankr.M.D.Ga.1992); *In re New Hampshire Elec. Coop., Inc.,* 146 B.R. 890, 892 (Bankr.D.N.H.1992); *In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 489 (Bankr.N.D.Ill.1992);  3 *Collier on Bankruptcy* ¶ 330.05[3], at 330-65 (Lawrence P. King et al., eds., 15th ed.1997).

We also are aware that courts have differed over whether expenses such as those prohibited here are or are not sufficiently client-specific to avoid the "overhead" label.  While a number of district and bankruptcy courts have declared that items such as secretarial overtime, postage, xeroxing charges, and computer research can adequately be linked to a law firm's representation of a particular client and so are compensable, others have held, like the judge here, that these items are non-compensable "overhead."  *Compare In re Mulberry Phosphates, Inc. ("Mulberry I"),* 151 B.R. 948, 951 (M.D.Fla.1992) ("Disbursements such as clerical expenses, postage and express mail services, local travel expenses and computer time do not constitute overhead in this case because they are all attributable to an individual client through the user fee billing system.")[3] *and In re National Paragon Corp.,* 76 B.R. 73, 74 (E.D.Pa.1987) (holding that the automatic exclusion of xeroxing costs, postage and travel expenses as "overhead" was an abuse of discretion) *and In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 584-85 (Bankr.D.Utah 1985) (deferring to the billing practice of the profession in allowing compensation for meals, word processing, messenger service,

---

[3]Appellants argue that because *Mulberry I* was decided in this bankruptcy court's district—and in fact overruled a fees decision by this bankruptcy judge that was similar to the one below—the bankruptcy judge should have followed *Mulberry I* and allowed the expenses. We have been presented with no Supreme Court or court of appeals precedent on whether decisions by a district court will constitute binding precedent for the bankruptcy courts in the same district, and the few district courts to consider the issue are split.  *Compare In re KAR Dev. Assocs., L.P.,* 180 B.R. 629, 640 (D.Kan.1995) (holding that bankruptcy courts are *not* bound by district court precedent, even from their own district);  *with Bryant v. Smith,* 165 B.R. 176, 180-81 (W.D.Va.1994) (holding that bankruptcy courts *are* bound by district court precedent from their own district).  This court, of course, is not bound by district court precedent, and, since the standard of review would not change either way, we see no reason to decide whether district court decisions may constitute binding precedent for bankruptcy courts.

taxi fares, parking, xeroxing, postage, express mail, and computer research costs), *with In re New Hampshire Elec.,* 146 B.R. at 903 (concluding that expenses associated with faxing, word processing, document production and computer-assisted legal research are all non-compensable "overhead") *and In re Convent Guardian Corp.,* 103 B.R. 937, 940 (Bankr.N.D.Ill.1989) (holding that, absent extraordinary circumstances, expenses associated with secretarial overtime, postage, messenger services, and express mail are all non-compensable "overhead") *and In re Citizens Mortgage Inv. Trust,* 37 B.R. 813, 821 (Bankr.D.Mass.1984) (ruling that "overtime to employees, rent, express charges, ordinary postage, and routine copying" are all non-compensable "overhead").

We think that the legislative history of the current bankruptcy statute is inconsistent with the narrow reading of § 330(a)(2) adopted below. Congress has recently indicated a desire to promote the same billing practices in bankruptcy cases as in other branches of legal practice. While "user billing" is certainly not the only billing practice employed today, its use is widespread. A good many reputable firms bill as expenses many of the items rejected in advance by the bankruptcy judge here. Moreover, as all or most of the prohibited items can be readily calculated in reference to work done in a specific case, it is far from obvious that they are, by their nature, non-billable overhead.

Before 1978, courts applied "the spirit of economy" as a factor to be weighed in awarding attorneys' fees in bankruptcy cases. *See In the Matter of First Colonial Corp. of Am.,* 544 F.2d 1291, 1299 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); 3 *Collier on Bankruptcy,* ¶ 330.04[3][a] (Lawrence P. King, et al., eds., 15th ed.1997). Congress rejected this factor when it enacted the Bankruptcy Reform Act of 1978. Congress concluded that taking economy into account interfered too much with the policy of encouraging skilled professionals to participate in bankruptcy cases:

> Attorneys' fees in bankruptcy cases can be quite large and should be closely examined by the court. However bankruptcy legal services are entitled to command the same competency of counsel as other cases. In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11.... Notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy code.

124 Cong. Rec. 33,994 (daily ed. October 5, 1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.C.C.A.N. 6505, 6511; *see also In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 850 (3d Cir.1994) ("Congress determined, it appears, that on average the gain to the estate of employing able, experienced, expert counsel would outweigh the expense to the estate of doing so, and that unless the estate paid competitive sums it could not retain such counsel on a regular basis."); 3 *Collier on Bankruptcy,* ¶ 330.04[3][b] (Lawrence P. King, et al., eds., 15th ed. 1997) ("The economy factor was abandoned under the Bankruptcy Code in favor of the new policy that attorneys engaged in bankruptcy cases should receive compensation in parity with that received by attorneys performing services in comparable situations.").

The policy of comparable compensation is specifically written into § 330(a)(1), which expressly includes "the cost of comparable services other than in a case under this title" as a factor to be considered in establishing the compensation of attorneys working on a bankruptcy case. 11 U.S.C. § 330(a)(1).

To be sure, Section 330(a)(2), which provides for the reimbursement of bankruptcy attorneys' actual, necessary expenses, does not make explicit reference to the cost of comparable services outside of bankruptcy as does (a)(1). Nor does (a)(2) supply criteria as to how to differentiate expenses from non-reimbursable "overhead." But if the cost of comparable services is a relevant factor in setting compensation for services under (a)(1), it would logically seem also to be a relevant factor in determining what categories to treat as reimburseable expenses under (a)(2). In many cases, the amount of the hourly fees charged by lawyers and their firms for services may be linked to the categories of expenses that they bill separately. Professionals who make a practice of billing separately for such items as computer research costs and secretarial overtime may well charge lower hourly fees for their services than will professionals who absorb such costs as part of their "overhead." *See generally In the Matter of D'Lites of America, Inc.,* 92 B.R. 554, 556 (Bankr.N.D.Ga.1988) (recognizing the relationship between a law firm's billing rate and the categories of expenses charged separately); *In re Kreidle,* 85 B.R. 573, 576 (Bankr.D.Colo.1988)

8

(same). We think that if certain categories of expenses are commonly billed by practitioners in non-bankruptcy practice, they should not be arbitrarily excluded under (a)(2).

In the present case, the bankruptcy court gave no reason for its refusal to reimburse the listed categories of expenses other than its unexplained conclusion they are "overhead" and built into the applicants' hourly billing rate. As already explained, many, if not all, of the excluded expense categories seem rationally related to services performed for the individual clients in a particular case. The court's announced assumption that the listed categories could not be viewed as anything but non-compensable "overhead" built into the applicants' billing rate is unsupported by evidence of the billing practices in non-bankruptcy matters of comparable law firms or by reference to any other professional source. Nor, as we have previously noted, did the court find as a fact (nor is there any record evidence to support a finding) that the hourly billing rates charged in this case were constructed so as to include the categories of expenses at issue. The ruling seems to have been based rather on the judge's personal belief that it is unseemly for items of this nature to be regarded as anything but unbillable "overhead." On this record, we cannot endorse the theory that the listed items necessarily belong in a non-compensable "overhead" category. Most, perhaps all, of these items will vary from client to client; in our experience, they are often billed separately as expenses by reputable lawyers and law firms. We doubt, therefore, that they can be held to be "overhead" in some invariable, absolute legal sense. This is not to deny the court's authority to exclude any of the expenses billed here if found to be wrongly calculated, overstated, or, in some way, not "actual, necessary expenses." Nor would we rule out the court's authority to adjust the Appellants' hourly billing charges if found excessive in light of the claimed expenses. But no specific findings of this nature were made.

The Third Circuit has held, and we agree, that the best approach to achieving the goal of full—but not excessive—compensation "is to rely on the market, subject to the modification that the court will, in practical terms, act as a surrogate for the estate, reviewing the fee application much as a sophisticated non-bankruptcy client would review a legal bill." *In re Busy Beaver,* 19 F.3d at

9

848. This is not to say that a bankruptcy court must always move in lockstep with the billing structure a law firm employs. Obviously it is a court's duty to reject a flawed, excessive or illegal billing methodology, and there may be special reasons articulated by a court for disallowing even cognizable expenses in light of the facts of a particular case. The court has considerable discretion over the amounts awarded by ways of fees and expenses; the statute provides that the court "may award" fees and expenses, indicating a broad discretionary grant. But the court may not arbitrarily exclude by fiat whole categories of otherwise reimburseable expenses from the coverage of § 330(a)(2).

As the court erred in stating its rejection of these categories of expenses as a rule of law concerning what was necessarily included within "overhead," we remand for reconsideration of Appellants' compensation and expenses. On remand, the bankruptcy court should recognize that the firms' hourly rates were established on a "user fee" basis and determine a total compensation that fairly reimburses, among other things, the firms' actual and necessary expenses as provided in § 330(a)(2). The compensation should, moreover, fit within the above-discussed concept of "comparable compensation." The bankruptcy court is directed to make findings, in so doing, from which it will be possible for the district court and ourselves, upon review, to ascertain the various components of the total compensation that is awarded.

VACATED and REMANDED.

CARNES, Circuit Judge, dissenting:

As the majority correctly notes, the Bankruptcy Code provides that lawyers for the debtor and professionals employed by committees pursuant to 11 U.S.C. § 1103 are entitled to be compensated at a reasonable rate for actual, necessary services rendered, and they are entitled to be reimbursed for actual, necessary expenses incurred. *See* 11 U.S.C. § 330(a)(1). We allow the bankruptcy court to exercise discretion in arriving at the amounts to be paid, for obvious reasons. The bankruptcy court is the court that is most familiar with the prevailing market rates for bankruptcy legal work, the relative difficulty of the case before it, the quality of the attorneys'

representation, the efforts the attorneys have made to salvage the bankruptcy estate, and other factors that should be weighed in deciding the reasonableness of fees as well as the necessity and reasonableness of expenses. Because bankruptcy courts have in-depth knowledge about and extensive experience with these matters, and we do not, we review their fee and expense awards only for an abuse of discretion. *See, e.g., In re Prince,* 40 F.3d 356, 359 (11th Cir.1994). We should be, and usually are, reluctant to second guess bankruptcy courts on such matters.

However, the majority second guesses the bankruptcy court in this case about its method of ensuring a reasonable total payment for services rendered and expenses incurred by counsel. I would give bankruptcy courts more latitude about such matters. If a bankruptcy court, based upon its superior knowledge about and experience with such matters chooses to utilize a payment formula that estimates an expected average of expenses normally incurred in such work and reflects that amount in a suitably inclusive hourly fee rate, we should allow it to do so. Likewise, if a bankruptcy court chooses to skinny down the hourly fee rate and separately reimburse expenses that would in most other contexts be included in a larger hourly fee, it should be given the leeway to do that, too. The same is true of any compensation and reimbursement approaches that fall between those two. The Bankruptcy Code entrusts bankruptcy courts with the principal responsibility for carrying out its provisions in the thousands of cases filed in those courts. Wisely, the Code does not discourage bankruptcy courts from fully exercising their judgment and discretion about such matters as compensation and reimbursement methods for legal services. Neither should we.

Bankruptcy courts are not required to accept law firms' explanations of their fees and expenses as the gospel truth. They often recognize that hourly fee rates are calculated with typical expenses in mind, including many of the expenses the separate reimbursement of which were disallowed by the bankruptcy court in this case. *See, e.g., In re New Hampshire Elec. Coop., Inc.,* 146 B.R. 890, 903 (Bankr.D.N.H.1992) (holding that photocopying, computer research, and other expenses are compensated in fee award except when unusually high). As one bankruptcy court has explained:

11

"Overhead expenses" have been held to include, but are not limited to, library expense, rent and utility expense, secretarial and clerical expense, office supply expense, telephone expense, and the local commuting and meal expenses of individual employees. See In re Global International Airways Corp., 38 B.R. 440, 444 (Bankr.W.D.Mo.1984) (disallowed secretarial expense claim); In re Rego Crescent Corp., 37 B.R. 1000, 1009, 1012, 1018 (Bankr.E.D.N.Y.1984) (disallowed request for allowance of local transportation, library, secretarial and in-town meal expense); In re Horn & Hardart Baking Co., 30 B.R. 938, 942 (Bankr.E.D.Pa.1983) (disallowed request for allowance of clerical, support staff expense). These expenses have a common characteristic in that they are incurred by the firm on a day-to-day basis, no matter whom it represents. A law firm or accounting firm will require, for example, a permanent secretarial and clerical staff. The traditional way to spread these kinds of daily expenses among all the firm's clients is for the firm to structure its hourly rates to take such expenses into consideration. Where a firm seeks to charge a single client, particularly one in bankruptcy, for expenses which are treated as overhead expenses by most other law firms, the natural inclination of the Court is to consider 1) that the firm's hourly rates are unreasonably high; and 2) that the firm is attempting to charge the debtors for expenses actually incurred in the service of other clients. Fee applicants are hereby cautioned against the practice of including in their application requests for reimbursement of expenses, which should be absorbed as part of the firm's overhead.

*In re Thacker,* 48 B.R. 161, 164 (Bankr.N.D.Ill.1985).

Our role should be limited to a review of the overall amount awarded, a review designed to ensure that the total figure is fair—not excessive, but fair—whatever the method used. Instead of taking that broad view, the majority apparently requires that bankruptcy courts yield to whatever billing method or methods the firms appearing before it prefer to employ. Acknowledging that the "user billing" method of tracking expenses "is certainly not the only billing practice employed today," the majority nonetheless mandates that the bankruptcy court treat that method as though it is the only one, if the law firms prefer to use it. Of course, if there are three or four firms seeking reimbursement of expenses in a given case, and each uses a different billing method, under the majority's "law firm dictates" doctrine the bankruptcy court will be required to approve and accommodate three or four different expense billing methods.

While purporting to recognize that the bankruptcy courts have some discretion in such matters, in fact the majority's "law firm dictates" doctrine gives all of the discretion about billing methods to the law firms. The bankruptcy courts are left with none. The majority has it backwards. A bankruptcy court ought to be allowed to insist upon any fair billing method it chooses for the case, absent some strong reason to believe that the firm's particular method is the only appropriate one.

Otherwise, the law firm tail will wag the bankruptcy dog. Bankruptcy courts do not exist to serve law firms, and we ought not make the judicial will bend to the desires of lawyers, especially not in areas where lawyers have a strong financial interest at stake.

About court prerogatives, look at it this way. Suppose some law firm sent us an appellate brief that was out of kilter with our rules. Accompanying the uniquely arranged brief was a letter explaining that the firm had found it most efficient to do all of its communications that way and would insist upon communicating in that manner with us. Just as we would not be deferential to the law firm's method in that circumstance, we should not require the bankruptcy court to be in this circumstance.

According to the Statistics Division of the Administrative Office of the United States Courts, as of June 30, 1997, over 423 chapter 11 cases were assigned to the bankruptcy judge who handled this case. Faced with that case load, a bankruptcy judge should not be required to familiarize himself with and ride herd over 423 different billing methods, or a half dozen, or even two. A good reason for not adopting a law firm's billing method in a case is that not every law firm uses the identical billing method with the same definition of overhead versus separate expenses.

After reviewing the record, I believe that the bankruptcy court did comply with the requirements in § 330(a)(1), and that its total awards were not abuses of discretion. I disagree with the way the majority interprets the bankruptcy court's decisions in this case. In its first "Order on Interim Fee Applications," issued on October 5, 1990, near the beginning of the case, the bankruptcy court decided both: (1) the hourly rate that would constitute a reasonable one for the law firms' legal work, and (2) which types of expenses were not included in that hourly rate and would be awarded separately. The bankruptcy court quite generously determined that a blended hourly rate of $229 for Stroock & Stroock & Lavan, and a blended hourly rate of $292 for Kaye, Scholer would be reasonable. It also determined in that very same interim fee order that, for the purposes of pending and future requests for compensation, categories of expenses "which are properly attributable to overhead can not be reimbursed because they are built into Applicant's hourly billing rate and should

13

not be borne by the Debtors." The court remarked, "This Court will not be placed in a position to be chastised by the District Court for establishing for professionals a Christmas feast in July similar to that which occurred in *A.H. Robins Co., Inc.,* No. 85-01307-R (E.D. Va.[ ] Nov. 25, 1987) and in *In re Johns-Manville Corp.,* No. 82 B 11656 through 82 B 11676 (S.D.N.Y. October 5, 1990)."

The law firms were put on notice from the beginning, for example, that the court would not separately award most postal expenses, secretarial charges, word processing charges, local travel expenses, express mail charges, and computer research charges, because the court considered them overhead, i.e., part of the firms' cost of doing business which was amply covered by the fees awarded. The bankruptcy court stood by its decision throughout the case, despite repeated requests by the firms to be reimbursed for expenses that they should have known would not be reimbursed, other than through their fees. The court awarded interim fees of $5,353,282 to Stroock & Stroock & Lavan, and $5,718,756 to Kaye, Scholer. For expenses not included in overhead and covered by the fees, the court awarded $445,838.42 to the Stroock firm, and $165,074.94 to Kaye, Scholer. The expenses disallowed were $341,953.01 and $514,636.97, respectively.

The majority is concerned that the bankruptcy court may not have considered whether the hourly rates that it awarded to the firms would adequately compensate the firms for the disallowed categories of expenses. I see no basis for that concern in the record. It appears to me that the bankruptcy court did carefully consider whether the generous blended hourly fee figures that it approved were adequate to cover the amount of necessary expenses that it described as overhead and did not intend to reimburse separately. I would therefore affirm the district court's affirmance of the bankruptcy court's final fee and expense order.

Even though I disagree with the majority's approach and do not think a remand is required, the overall dollar result in this case may wind up being the same, anyway. As the majority has carefully phrased it, the remand is not for reconsideration of the expenses award alone, but for reconsideration of both compensation and expenses. While the bankruptcy court on remand is required to recognize the law firms' user fee method, it is not required to approve the same hourly

14

fee rates that it found appropriate when a non-user fee method of expense reimbursement was contemplated by the court. On remand, the bankruptcy court is free to adjust those large hourly rates downward in view of the additional amount of expenses that the majority has dictated must be counted separately instead of being included as part of overhead. As the majority says: "Nor would we rule out the court's authority to adjust the [firms'] hourly billing charges if found excessive in light of the claimed expenses." It is the total compensation that must be fair—not excessive, but fair.

Indeed, if the bankruptcy court approved the generous hourly fee rates it did based upon the assumption that some of the expenses it must now award separately were to be covered in those hourly rates, it might be irrational for the court not to adjust the hourly rates downward now that that assumption has been corrected. If the bankruptcy court finds that those hourly rates when considered in relation to a "user fee" system are excessive and should be reduced, that decision will be overturned only if it is clearly erroneous. And the majority has assured us that clear error is "a very high standard, and one we would rarely be likely to find, especially in a fees situation."