See also 127 B.R. 65.

**In re MARTEC CORPORATION, Debtor.**

**Robert L. GASS, Jr., Appellant,**

v.

**Milton G. FRIEDMAN, Appellee (Two Cases).**

**Nos. 92–6366–CIV, 93–6968–CIV and 89–02009–BKC–AJC. Adv. No. 90–0397–BKC–AJC–A.**

United States District Court, S.D. Florida.

June 2, 1994.

---

428

Chad P. Pugatch, Law Offices of Chad P. Pugatch, Fort Lauderdale, FL, for appellant.

Susan Lasky, Susan Lasky, P.A., Fort Lauderdale, FL, for appellee.

***ORDER AFFIRMING THE FINAL JUDG-MENT OF BANKRUPTCY COURT ENTERED ON OCTOBER 7, 1991; AND VACATING AND REMANDING FINAL JUDGMENT OF BANKRUPT-CY COURT AGAINST GARNISHEE, AMERICAN NATIONAL BANK, N.A.***

ARONOVITZ, District Judge.

This matter involves two separate appeals by Appellant Robert L. Gass, Jr. ("Gass"). In the appeal designated as Case No. 92–6366–CIV–ARONOVITZ, Gass appeals from a Final Judgment entered in favor of the Trustee in Bankruptcy on October 7, 1991 by visiting Judge Bernice B. Donald, sitting by designation in the United States Bankruptcy Court for the Southern District of Florida. In the appeal designated as Case No. 93–6968–CIV–ARONOVITZ, Gass appeals from a Final Judgment Against Garnishee American National Bank, N.A. entered on November 25, 1992 by visiting Judge Francis Conrad, sitting by designation in the United States Bankruptcy Court for the Southern District of Florida.

The Court has considered the briefs on appeal, oral argument of counsel, the decisions of the lower court, the applicable law and pertinent portions of the record, and is otherwise fully advised in the premises. For the following reasons, this Court AFFIRMS the October 7, 1991 Final Judgment; and VACATES AND REMANDS the November 25, 1992 Final Judgment Against Garnishee American National Bank, N.A.

***Factual and Procedural Background***

The Appellee, Milton G. Friedman, as Trustee in Bankruptcy of the debtor, Martec Corporation ("Martec"), instituted the underlying adversary proceeding seeking to recover, among other things, two transfers made through Gass to Gass' company that were alleged to be preferential and fraudulent under § 547(b) and § 548(a) of the United States Bankruptcy Code, respectively. The transfers that are the subject of the adversary complaint concern two parcels of land, which will be referred to a "Parcel 191" and "Parcel 195." The relevant facts are as follow.

On or about April 26, 1989, an involuntary petition was filed against Martec under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida. Martec, located on Parcel 195, manufactured and sold patio furniture. Gass was the director, president and sole shareholder of Martec and the owner of Parcel 195. The lease agreement between Gass and Martec for Parcel 195 provided that all improvements, alterations and additions made by the tenant to the land shall become the property of the landlord. Martec itself owned real estate located at 900 S.W. 20th Way, Ft. Lauderdale, FL, referred to as "Parcel 191."

On or about August 22, 1988, Martec entered into two separate contracts with the Florida Department of Transportation ("DOT") to sell Parcel 195 and certain items thereon for $3,985,000.00, and Parcel 191 for $155,000. The proceeds from the sale of these properties and the subsequent foreclosure on Parcel 195 are the subject of the alleged preferential and fraudulent transfers at bar.

*The Sale of Parcel 195*

By September 8, 1988, Martec was indebted to Florida National Bank ("FNB") in an amount exceeding $4.5 million pursuant to a variety of promissory notes, guarantees, mortgages, financing statement and other security documents (collectively, the "FNB security documents"). The FNB loans were secured by all of Martec's assets,[1] and Gass and his wife personally guaranteed the loans.

---

1. The parties stipulated at trial that FNB held a recorded, perfected security interest in all assets owned by Martec.

At some time prior to the closing on Parcel 195, Gass entered into an agreement with FNB and another entity, Capicorp Financial Services, Inc. ("Capicorp"), pursuant to which Capicorp agreed to advance $1.7 million to FNB on behalf of Gass and FNB agreed to assign its secured position to Capicorp for $1.7 million. On September 9, 1988, FNB assigned to Capicorp all rights, title and interests which FNB had or may have in "certain notes, guarantees, mortgages, financing statements and other security documents executed by any one or more of the following parties: Mar-Tec Corporation [ ], International Cushion Co. [ ], R.L.G. Unlimited, Inc. [ ], and Robert L. Gass, Jr. and Victoria F. Gass" for $1.7 million.

The closing on Parcel 195 occurred on October 21, 1988. The total purchase price of $3,985,000 was made payable by DOT to a trust account and was distributed as follows: $1,508,438.82 to the first mortgagee; $2,168,551.20 to Capicorp in consideration of the $1.7 million prior advance; and several disbursements to Gass, the exact amount of which was undetermined by the bankruptcy court. On October 25, 1988, Capicorp assigned the FNB security documents to R.G. Furniture Corporation ("R.G. Furniture"), a new corporation wholly owned and controlled by Gass.[2] The assignment to R.G. Furniture was unrecorded. R.G. Furniture then foreclosed on the FNB security interest under Article 9 of the Uniform Commercial Code.

The Trustee alleges that certain machinery and equipment and other improvements to Parcel 195 were assets belonging to Martec, and that $363,650 of the total proceeds from the sale of Parcel 195 was payment by DOT for said assets. Therefore, he argues, Martec (not Gass) should have received $363,650 from the sale of Parcel 195.

*Sale of Parcel 191*

The second transfer alleged in the adversary complaint involves the sale proceeds from Parcel 191. The closing on Parcel 191 was originally scheduled to be held within thirty days of August 22, 1988, but it was postponed until January 4, 1989. The net proceeds of $100,458.50 was made payable to

Martec in a cashier's check, and Gass, as president of Martec, endorsed the check to the order of R.G. Furniture. The Trustee claims that those monies belonged to Martec.

*The Bankruptcy Court's Decision*

A trial was held on the adversary complaint on July 19, 1991 before Judge Donald. On September 18, 1991, Judge Donald entered the Memorandum Opinion and Order on Trustee's Motion Concerning Use of Proceeds from the Sale of Certain Property of the Debtor (the "Memorandum Opinion"), wherein she found that (1) the transfer of proceeds from the sale of property owned by Martec to R.G. Furniture constituted an avoidable insider preference under 11 U.S.C. § 547(b) and a fraudulent transfer under 11 U.S.C. § 548(a); and (2) that the foreclosure of the security agreements held through a prior assignment by Gass constituted a voidable insider preference. *See* Memorandum Opinion at 13. Specifically, Judge Donald found that the proceeds from the sale of Parcel 191 constituted property of the estate which should have been applied to Martec's existing debts, but instead, were received by Gass and transferred to R.G. Furniture. *See id.* at 8–9. With respect to Parcel 195, Judge Donald found that the foreclosure by R.G. Furniture on the FNB security documents constituted a preferential transfer that allowed Gass, as an insider, to wipe out his potential liability as a guarantor on the FNB loan. The court also found that the proceeds from the sale of "the Debtor's property in conjunction with Parcel 195" were used by Gass to purchase his personal debt and guarantees to FNB. *See id.* at 10–11.

A Final Judgment against Gass was entered on October 7, 1991 for damages in the lump sum amount of $348,108.50. It does not specify the amount of damages attributable to the transfer relating to Parcel 191 and those relating to Parcel 195. Gass' subsequent motion for rehearing or new trial was denied and the first appeal, designated as Case No. 92–6366–CIV–ARONOVITZ, followed.

---

**2.** The evidence established that R.G. Furniture manufactures patio furniture and operates from the same premises as Martec. *See* Trial Tr. at 69.

*Execution on the Final Judgment Against Gass*

Meanwhile, in an effort to satisfy the Final Judgment against Gass, the Trustee garnished five certificate of deposit accounts held by American National Bank, N.A. (the "Bank"). This garnishment is the subject of the second appeal, Case No. 93–6968–CIV–ARONOVITZ. All five garnished accounts were titled in the name of "Mildred L. Gass or Robert L. Gass, Jr., or Linda G. Scott." Mildred L. Gass is Gass' mother and Linda G. Scott is his sister.

Prior to the actual garnishment, Gass moved to dissolve the writ of garnishment, claiming that the subject accounts were not his property but rather, his mother's. In support of the motion, Gass filed his mother's affidavit which stated that she owned the accounts, that Gass did not provide any of the funds in those accounts, and that the names of Gass and his sister were placed on the certificates at her request but that at all times, she exercised dominion and control over the accounts. Gass also filed his own affidavit, the substance of which was the same as his mother's affidavit.

The bankruptcy court, however, concluded that the accounts were the proper subject for garnishment since pursuant to Fla.Stat. § 658.55, the monies in the accounts may be payable to Gass. It therefore entered a Final Judgment against the Bank in the amount of $70,765.79, the total value of the accounts. Gass appeals this Final Judgment as well.

**Discussion**

The Court has jurisdiction of these appeals pursuant to 28 U.S.C. § 158(a) (West 1993).

The issues presented on appeal are: (1) whether the lower court erred in concluding that Parcels 191 and 195 were fraudulently and/or preferentially transferred under 11 U.S.C. §§ 548(a) and 547(b); and (2) whether the lower court erred in entering a final judgment against the Bank without conducting a jury trial or evidentiary hearing where a third party has claimed ownership of the garnished accounts.

█ In accordance with the Federal Rule of Bankruptcy Procedure 8013, the Court will not set aside the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Chase & Sanborn Corp.*, 904 F.2d 588 (11th Cir.1990); *In re T & B General Contracting, Inc.*, 833 F.2d 1455 (11th Cir.1987). Equitable determinations by the lower court are subject to review under an abuse of discretion standard, *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir.1990), and conclusions of law are subject to *de novo* review. *Chase & Sanborn Corp.*, 904 F.2d at 593; *In re Sublett*, 895 F.2d 1381 (11th Cir.1990). The Court will address the issues on appeal in accordance with these standards of review.

## A. PREFERENTIAL AND FRAUDULENT TRANSFERS UNDER THE BANKRUPTCY CODE

█ A preference is a transfer within 90 days of the filing of the petition (or within one year if the creditor was an insider) on account of an antecedent debt made while the debtor is insolvent that enables a creditor to receive more than it would in a Chapter 7 case if the transfer had not been made. *See* 11 U.S.C. § 547(b).[3] A fraudulent conveyance under 11 U.S.C. § 548(a)(1) is, in relevant part, a transfer of any interest or obligation of the debtor, that was made or incurred within one year before the date of the

---

**3.** Section 547 provides in relevant part:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made (A) on or within 90 days before the date of the filing of the petition; or (B) between 90 days and one year before the date of

the filing of the petition, if such creditor at the time of such transfer was an insider; and
 (5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547.

filing of the petition, if the debtor made such transfer or incurred such obligation with the actual intent to hinder, delay or defraud any entity to which the debtor was or became indebted.[4]

The bankruptcy court concluded that the transfer of the proceeds from the sale of Parcel 191 and Parcel 195 to R.G. Furniture, a new company created and controlled by Gass, constituted an avoidable insider preference under 11 U.S.C. § 547(b). *See* Memorandum Opinion at 8–11. It further concluded that the transfers were fraudulent under 11 U.S.C. § 548(a). *See id.* at 11–12. It also found that the foreclosure of the FNB documents, that were guaranteed by Gass, constituted a voidable insider preference. *See id.* at 10–11, 13.

On appeal, Gass attacks these conclusions on the grounds that not all of the elements of a preference or a fraudulent transfer were proven. For example, he argues that a portion of the Parcel 195 proceeds constituted payment for fixtures which belonged to him, rather than payment for machine and equipment, which were assets of Martec. Thus, he concludes, the proceeds were not property of the estate as required by § 547(b). He argues that none of the transfers in question was made to him directly and therefore, there can be no preference. He argues that the foreclosure of the FNB documents by R.G. Furniture did not constitute a preference because the foreclosure and the events preceding the foreclosure (including the assignments) were completely valid and legitimate. He further asserts that none of the transfers at issue enabled him to receive more than he would have in a Chapter 7 liquidation if the transfers had not occurred.

The Court has carefully considered each argument raised by Gass on appeal. It also has considered the directive from the Supreme Court of the United States that when an alleged fraudulent or preferential scheme is involved, the courts must be vigilant:

> No matter how technically legal each step in that scheme may have been, once its basic nature was uncovered it was the duty of the bankruptcy court in the exercise of its equity jurisdiction to undo it.

*Pepper v. Litton,* 308 U.S. 295, 312, 60 S.Ct. 238, 248, 84 L.Ed. 281 (1939); *see also, Jackson v. Star Sprinkler Corporation of Florida,* 575 F.2d 1223, 1226 (8th Cir.1978). Mindful of this directive and the duty of the bankruptcy court, the Court notes that although more specific findings of fact should have been made by the bankruptcy court to support its determination that Gass' activities with respect to Parcel 191 and Parcel 195 constitute a preference and a fraudulent transfer, it nonetheless reached the correct conclusion based on the evidence presented at trial.

With respect to Parcel 191, the evidence established that four months before the filing of the bankruptcy petition, a cashier's check in the amount of $100,458.50 was made payable to Martec and that Gass endorsed the check as president of Martec to the order of his new company, R.G. Furniture. The net effect and basic nature of this transaction was to deprive Martec of the proceeds from the sale of its own property and place them in the hands of Gass' new company. Clearly, only one person derived a benefit from this transaction, that being Gass under the name of R.G. Furniture. The bankruptcy court therefore correctly determined that the transaction constituted a preference under 11 U.S.C. § 547(b).

Moreover, the Court also agrees that the transfer of $100,458.50 to R.G. Furniture was intended to hinder, delay and defraud Martec's creditors. Had that transfer not taken place, the $100,458.50 cashier's check most likely would have been deposited into Martec's account. Thus, the transfer of the Parcel 191 proceeds was a fraudulent transfer under 11 U.S.C. § 548(a).

The bankruptcy court also correctly ruled that the use of the Parcel 195 proceeds

---

4. Section 548(a)(1) provides that:
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

 (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted;

 11 U.S.C. § 548(a)(1).

to purchase and then foreclose on the FNB security documents constituted a § 547(b) preference. While each event leading up to and including the foreclosure itself may have been legitimate (i.e., Capicorp's agreement to advance $1.7 million to FNB on behalf of Gass, the assignment of the security documents from FNB to Capicorp, the unrecorded reassignment from Capicorp to the newly formed R.G. Furniture, and R.G. Furniture's foreclosure on the notes), the basic nature and purpose of this scheme was to allow Gass to purchase his guarantees on the $4.5 million loans from FNB, thereby eliminating his potential liability on the debt as a guarantor.[5]

Based upon the circumstances and events surrounding the Parcel 195 proceeds and the FNB security documents, the Court is convinced that the transactions at issue amounted to a scheme, carefully crafted and orchestrated by Gass, to transfer the encumbered assets of Martec, unencumbered to R.G. Furniture. Before Gass initiated the series of complicated transactions referred to above, he was potentially liable on his guarantee of Martec's $4.5 million debt to FNB. Afterwards, Gass' potential liability magically disappeared. This disappearance clearly was a benefit to Gass and clearly did not come about by mere happenstance. Based upon the foregoing, the lower court correctly ruled that the Trustee may avoid that transfer as a preference under § 547(b).

In summary, the Court affirms the bankruptcy court's ruling regarding Parcel 191 and Parcel 195 based upon the bankruptcy court's generalized findings of fact and conclusions of law thereon and upon the equity principles articulated by the United States Supreme Court in *Pepper v. Litton, supra.*

## B. THE GARNISHMENT OF FIVE CERTIFICATE OF DEPOSIT ACCOUNTS AT AMERICAN NATIONAL BANK, N.A.

 Having affirmed the lower court's judgment entered against Gass as the result of the preferential and fraudulent transfers with respect to Parcel 191 and Parcel 195, the Court now considers whether the execution of that judgment as against the garnishee Bank was proper. Specifically, Gass challenges the propriety of the garnishment of five certificate of deposit accounts that were in the possession of the Bank on the ground that said accounts and the funds in those accounts were not his property. He claims that under Fla.Stat. §§ 77.07 and 77.-16, he was entitled to a trial on the ownership of those accounts prior to the garnishment. The Court agrees.

Chapter 77 of the Florida Statutes governs garnishment proceedings in Florida. The dispositive provision is § 77.16(1), which provides that:

> (1) *If any person other than defendant claims* that the debt due by a garnishee is due to him and not to defendant, or *that the property in the hands or possession of any garnishee is his property and shall make an affidavit to the effect, the court shall impanel a jury to determine the right of property between the claimant and plaintiff unless a jury is waived.*

Fla.Stat. § 77.16(1) (West 1987) (emphasis added). This statute clearly provides that if a third person claims ownership of the property sought to be garnished, the court "shall impanel a jury" to determine the issue, unless a jury is waived. *See also, Tortuga Marine Salvage Co. v. Hartford Accident & Indemnity Co.,* 171 So.2d 54 (Fla. 3d DCA 1965) ("where a claimant asserts a right to garnished property it is the duty of the court to try the controversy and determine the rights of the parties, and, in Florida, such trial may be had by jury").

In this case, Mildred L. Gass, Gass' mother, fully complied with Fla.Stat. § 77.16(1). Prior to the hearing on Gass' timely motion to dissolve the writ, she submitted an affida-

---

5. The lower court was entirely correct in finding that Gass, as a guarantor of Martec's $4.5 million loans from FNB, was a "creditor" of Martec as defined in 11 U.S.C. § 101(9)(A). *See Levit v. Ingersoll Rand Financial Corp.,* 874 F.2d 1186, 1190 (7th Cir.1989) (a guarantor of a debtor is a

"creditor" within the meaning of the Code because he holds a contingent right to payment from the debtor); *In re Tax Reduction Institute,* 148 B.R. 63, 68 (Bankr.D.Colo.1992) (same); *In re Aerco Metals, Inc.* 60 B.R. 77, 79 (Bankr. N.D.Tex.1985).

434

vit to the effect that the five certificate of deposit accounts at issue were her property and not her son's. Once that affidavit was filed, the court was obligated under Fla.Stat. § 77.16(1) to hold a trial on the matter, by jury unless a jury is waived. The record, however, indicates that the final judgment against the Bank was entered without so much as holding an evidentiary hearing on the matter.

Based on the foregoing, the Court vacates the Final Judgment Against American National Bank, N.A. and remands the matter to the bankruptcy court for Mildred L. Gass to exercise her right to a jury trial on the true ownership of the five certificate of deposit accounts at issue, and if waived, for an evidentiary hearing on the same.

*Conclusion*

Based upon the foregoing, it is

ORDERED AND ADJUDGED that:

1. In Case No. 92–6366–CIV–ARONO-VITZ, the Final Judgment entered against Gass on October 7, 1991 by the Bankruptcy Court be, and the same is, hereby AFFIRMED.

2. In Case No. 93–6968–CIV–ARONO-VITZ, the Final Judgment Against Garnishee American National Bank, N.A. entered on November 25, 1992 by the Bankruptcy Court is hereby VACATED AND REMANDED in accordance with the opinion and instructions herein.

DONE AND ORDERED.